UNITED STATES of America, Plaintiff,

v.

Carl A. FUCCILLO, Defendant.

Crim. No. 86–00019–C.

United States District Court, D. Massachusetts.

May 9, 1986.

promptly file this federal action which is the basis for today's ruling.

Robert L. Jubinville, Milton, Mass., for defendant.

Paul F. Healy, Boston, Mass., for the U.S.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a criminal action in which the defendant Carl A. Fuccillo has been charged with one count of receiving stolen goods in interstate commerce under 18 U.S.C. § 2315, four counts of possession of goods stolen from interstate shipment under 18 U.S.C. § 659, and one count of interstate transportation of stolen goods under 18 U.S.C. § 2314. The matter is now before the Court on the defendant's motion to suppress all articles seized during the execution of three search warrants on September 28, 1984.

As grounds for his motion to suppress, the defendant contends that the searches were executed in violation of his rights under the Fourth Amendment of the United States Constitution. More specifically, the defendant maintains that the affidavit of F.B.I. Agent Frisoli, relied upon by the Magistrate issuing the warrants, did not support a finding of probable cause, and that the warrants failed to specify the articles to be seized with sufficient particularity. The defendant further maintains that Agent Frisoli and the other F.B.I. agents who executed the warrants did not act in objectively reasonable reliance upon the warrants and, accordingly, the good faith exception to the exclusionary rule established by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not apply. For the reasons set forth below, I rule that the warrants in this case did not meet the particularity requirement of the Fourth Amendment, and I further rule that the government has failed to show that the F.B.I. agents who executed the warrants acted in good faith.[1]

After hearing, I find and rule that on September 28, 1984 F.B.I. agents executed three separate search warrants for the following premises: 1) a one-story red brick building housing Fashion Apparel Distributors ("FAD"), a wholesale distributor located at 191 Revere Street, Revere, Massachusetts; 2) a one-story beige brick building, housing a warehouse, located at 5 Fayette Street, Milford, Massachusetts; and 3)

---

1. Because I rule that the search warrants fail to meet the particularity requirement of the Fourth Amendment, it is unnecessary to determine whether Agent Frisoli's affidavit was sufficient to establish probable cause. The Court notes, however, that the affidavit, particularly with respect to the Milford and Revere premis-

es, was based principally upon information supplied by a confidential informant whose "reliability," "veracity," and "basis of knowledge" were not addressed in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983).

Fashions on Tremont, a retail store located on the first floor of 151 Tremont Street, Boston, Massachusetts. Each of the three warrants authorized the seizure of "cartons of women's clothing, the contents of those cartons, lists identifying the contents of the cartons, and control slips identifying the stores intended to receive these cartons, such items being contraband and evidence of a violation of Title 18, United States Code, Section 7659, Possession of Goods Stolen from Interstate Shipments."

In issuing the warrants, the Magistrate relied exclusively upon an affidavit submitted by F.B.I. Agent Lawrence Frisoli.[2] The affidavit related that two trailers containing 839 cartons of women's apparel and accessories were stolen between August 10–13, 1984 from Women's Specialty Retailing in Enfield, Connecticut. Information identifying the stores that were to receive the goods, including the store numbers, names, and addresses, were attached to the cartons. Agent Frisoli's affidavit further stated that the stores that were to receive the cartons of women's clothing "were among others Casual Corner." Most of the other information in the affidavit was provided by a confidential informant. The affidavit states that the informant advised Agent Frisoli that stolen women's clothing was located at FAD in Revere, the Milford warehouse, and Fashions on Tremont in Boston, that "it" had been inside FAD and the Milford warehouse, and that while inside these premises, "it" had observed Casual Corner women's clothing which "it" knew to be stolen.

■ Defendant Fuccillo contends that none of the warrants in this case specified the goods to be seized with sufficient particularity. The United States Supreme Court has explained that the particularity requirement "makes general searches under [warrants] impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *See also, Montilla Records of Puerto Rico, Inc. v. Morales,* 575 F.2d 324, 326 (1st Cir.1978). The warrants at issue in this case did not specify what types or brands of clothing were subject to seizure, but instead referred only to "cartons of women's clothing." Such a broad description is not necessarily fatal to the warrants. The Court of Appeals for the First Circuit has held that warrants which provide only a generic description of the goods to be seized may in some instances satisfy the particularity requirement. *United States v. Cortellesso,* 601 F.2d 28 (1st Cir.1979); *United States v. Klein,* 565 F.2d 183 (1st Cir.1977). While it is true that in certain cases a warrant which provides merely a generic description of the goods to be seized may be adequate, for the reasons stated below, I rule that the description of the goods to be seized in the three different warrants in this case fail to satisfy the particularity requirement of the Fourth Amendment.

■ The Court of Appeals for the First Circuit has established two similar but significantly different tests both of which must be met before a Magistrate may issue a valid warrant providing only a generic description of the goods to be seized: first, whether the evidence presented to the Magistrate established that there was reason to believe that a large collection of similar contraband was present on the premises to be searched; and second, whether the evidence before the Magistrate explained the method by which the executing agents were to distinguish between contraband and the rest of the defendant's inventory. *United States v. Cortellesso,* 601 F.2d 28, 31 (1st Cir.1979); *United States v. Klein,* 565 F.2d 183, 188 (1st Cir.1977). With respect to the requirement that there be reason to believe that a large collection of similar contraband was present on the premises, the Court of Ap-

---

**2.** Agent Frisoli's affidavit is set forth in its entirety in the appendix. Only those parts of the affidavit that relate to the issues of the specifici- ty of the warrants and the good faith of the agents will be discussed.

peals has said that "there must be specific and detailed foundation for such a belief." *Klein,* 565 F.2d at 188. There was no specific and detailed foundation for a belief that a large collection of stolen women's clothing in cartons was present at the FAD premises in Revere or the Milford warehouse. Agent Frisoli's affidavit stated that a confidential informant knew that stolen women's clothing was present at FAD and the Milford warehouse and that the informant personally observed stolen Casual Corner clothing at both locations. This information, when considered in light of the fact that 839 cartons of women's clothing, including cartons headed for Casual Corner stores, were previously stolen in Connecticut, arguably supports the inference that some of the 839 stolen cartons were in FAD and the Milford warehouse. Nonetheless, I rule that the information in the affidavit does not provide a sufficiently specific and detailed foundation for the belief that a large number of stolen cartons of women's clothing were present at the three locations. There is no information as to how much stolen clothing was at FAD or the Milford warehouse. Moreover, there is no information whatsoever in the affidavit that any *cartons* of women's clothing were at FAD or the Milford warehouse. In fact, Agent Frisoli's affidavit reveals that two F.B.I. agents observed through an open garage door at the Milford warehouse "several racks of hanging women's clothing."

The government has also failed to show that the evidence before the Magistrate, which again consisted only of Agent Frisoli's affidavit, explained the method by which the executing agents were to differentiate contraband from legitimate goods at FAD or the Milford warehouse.[3] Moreover, unlike the facts in *Cortellesso* where it was apparent from the affidavit that "for all practical purposes the collection [of sto-

len goods] could not be precisely described for the purpose of limiting the scope of the seizure," *Cortellesso,* 601 F.2d at 32, the F.B.I. in the instant case could have learned and presented to the issuing Magistrate specific information which would have enabled the agents executing the warrants to differentiate contraband cartons from legitimate ones. Agent Frisoli's affidavit expressly stated that attached to the 839 stolen cartons was "information identifying the store that was receiving the goods, including the store number, store name, and address." The government has made no showing that this information could not have been obtained from Women's Specialty Retailing in Connecticut or from someone else. In summary, I rule that in light of the information available to the agents which could have served to narrow the scope of the warrant and protect the defendant's personal rights, the warrants were inadequate. *See Klein,* 565 F.2d at 190.

The warrant authorizing the search of Fashions on Tremont is also constitutionally deficient for failure to specify the goods to be seized with sufficient particularity. In light of the information which Agent Frisoli's affidavit reveals was available to the F.B.I. and the Magistrate, a generic description in the warrant of the goods to be seized was clearly inadequate. In *Cortellesso,* the Court of Appeals for the First Circuit said that where a warrant contains only a generic description of the goods to be seized, it is proper for a court to look at the affidavit submitted in support of the warrant to determine whether the use of a generic description in the warrant was adequate. *Cortellesso,* 601 F.2d at 32. In addition to stating that there was information attached to the 839 stolen cartons of women's clothing identifying the number, names, and addresses of stores that were to receive the cartons, Agent Frisoli's affi-

---

**3.** In both *Klein* and *Montilla Records,* the principal reason for suppression was that the warrants failed to give the executing agents available information which would have enabled them to distinguish between contraband and legitimate goods. *Klein,* 565 F.2d 188–90; *Montilla Records,* 575 F.2d at 326. In *Klein,* both the warrant and the affidavit were considered on this issue because the warrant expressly incorporated the affidavit. *Klein,* 565 F.2d at 186 n. 3.

davit stated that on September 26, 1984 F.B.I. Special Agent Denise Shea Doherty and Anne Sweeney, the manager of a Casual Corner store located in Burlington, Massachusetts, visited Fashions on Tremont. The affidavit further stated that while at Fashions on Tremont Ms. Sweeney observed the following articles of women's clothing which she said were made exclusively for sale by Casual Corner stores: 8 Newsport skirts, 12 Jenniffer blouses, 12 organically grown sweaters, 100 Jennifer Reed cotton knit vests, and 2 dozen down angora sweaters. Therefore, unlike in *Cortellesso*, it cannot be said that "for all practical purposes the collection could not be precisely described for the purpose of limiting the scope of the seizure." *Cortellesso*, 601 F.2d at 32.[4] Instead of identifying the specific items of clothing observed by Ms. Sweeney, the warrant merely stated that "cartons of women's clothing ..." were subject to seizure. Significantly, Agent Frisoli's affidavit does not state that Ms. Sweeney observed any *cartons* of women's clothing at all at Fashions on Tremont, nor does the affidavit contain any other first hand information that cartons of women's clothing were located there.

■ The government argues that even if the three search warrants were constitutionally inadequate for their failure to specify the goods to be seized with sufficient particularity, this Court nevertheless should not suppress evidence seized pursuant to those warrants because at all pertinent times the F.B.I. agents involved in this case acted in good faith. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). For the following reasons, I rule that the government has failed to show that in executing each of the three warrants in this case the F.B.I. agents acted in good faith within the meaning of the Supreme Court's decision in *Leon*. The warrants in this case, again, identified the goods to be seized as "cartons of women's clothing, the contents of

those cartons, lists identifying the stores intended to receive these cartons ..." Based upon information which was known or which should have been known to the F.B.I. agents, it was not reasonable for the agents to believe that the search warrant for Fashions on Tremont satisfied the particularity requirement of the Fourth Amendment. Special Agent Frisoli's affidavit reveals that the agents knew the stolen cartons were identified by store number, store name, and address, yet the government has not shown why the agents did not obtain this information. More importantly, Frisoli's affidavit reveals that Ms. Sweeney of the Burlington Casual Corner store had been inside Fashions on Tremont and had specifically identified a number of articles of women's clothing which were made for sale exclusively by Casual Corner stores. Ms. Sweeney, it should be emphasized, did not see any cartons of Casual Corner women's clothing. For the good faith exception to apply, a law enforcement officer's reliance on "the technical sufficiency of the warrant [a magistrate] issues must be objectively reasonable." *Leon*, 104 S.Ct. at 3421 (1984). This objective standard requires an officer "to have a reasonable knowledge of what the law prohibits." *Id.* at 3420 n. 20. In light of the information which was known or, with reasonable effort, could have been known by the F.B.I. agents in this case, the search warrant for Fashions on Tremont was "so facially deficient—i.e., in failing to particularize the ... things to be seized— that executing officers [could not] reasonably presume it to be valid." *Id.* at 3422.

■ The government has also failed to show that the F.B.I. agents executing the search warrants for FAD in Revere and the Milford warehouse acted in good faith. In reaching this conclusion, the Court has confined its inquiry to whether "reasonably well-trained officer[s] would have known that the search[es] [were] illegal despite the magistrate's authorization." *Id.* at 3421 n. 23. Although, as has previously

---

**4.** In *Cortellesso*, the affidavits revealed that the labels had been removed from the Pierre Cardin suits so that a more precise description would not have assisted the officers in the field and,

with respect to other stolen items, only a generic description was known. *Cortellesso*, 601 F.2d at 32.

been pointed out, the FAD and Milford warrants gave the agents extremely broad authority to seize cartons of women's clothing, in executing those warrants, the agents went beyond that authority. In addition to taking cartons of women's clothing from the FAD premises in Revere, the agents took a rack containing 111 Sassoon dresses, empty boxes, and, most significantly, one rack of 74 *men's* cotton corduroy blazers and another rack of 56 *men's* cotton corduroy blazers. The agents executing the warrant for the Milford warehouse took the *entire contents* of the warehouse. F.B.I. documentation of the contents taken shows that, in addition to taking cartons of clothing, the agents took bins of clothing, 150 *men's* corduroy sport jackets, a stack of empty cardboard boxes, and racks of clothing. Prior to searching the Milford warehouse, F.B.I. Special Agent Ryall told the defendant Fuccillo that if any of the items located in the warehouse with mailing labels to "F.A.D., 5 Fayette Street, Milford, Massachusetts" were legitimate, Fuccillo should inform the F.B.I. Fuccillo did not respond, and Ryall then told Fuccillo that the entire contents of the warehouse were going to be taken. Language in the Supreme Court's decision in *Leon,* this Court believes, is clear that, as a matter of law, the good faith exception to the exclusionary rule must not be applied unless the officer or officers involved "acted within [the warrant's] scope" or "abided by its terms." *Id.* at 3420, 3421. The Supreme Court further stated in *Leon* that its discussion in that case of "the deterrent effect of excluding evidence obtained in reasonable reliance on a subsequently invalidated warrant assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant." *Leon,* 104 S.Ct. at 3419 n. 19.

Order accordingly.

## APPENDIX

### AFFIDAVIT

I, Lawrence Frisoli, Special Agent, Federal Bureau of Investigation, being duly sworn, do hereby depose and state the following:

1. I have been a Special Agent with the Federal Bureau of Investigation for approximately 13½ years.

2. According to information received from the FBI Field Office in New Haven, Connecticut, two trailers containing 839 cartons of women's apparel and accessories valued at approximately $500,000 were stolen between August 10–13, 1984, at Women's Specialty Retailing in Enfield, Connecticut. Attached to these cartons was information identifying the store that was receiving the goods, including the store number, store name, and address. The stores that were to receive these goods were among others Casual Corner. The two stolen trailers were moving in interstate transport when they were stolen.

3. On September 25, 1984, a confidential informant advised me that stolen women's clothing were located at Fashion Apparel Distributors, a wholesale distributor, located at 191 Revere Street, Revere, Massachusetts; Fashions on Tremont, a retail store located at 151 Tremont Street, Boston, Massachusetts; and a warehouse located at 5 Fayette Street, Milford, Massachusetts.

4. On September 26, 1984, at approximately 2:45 P.M., Special Agent Denise Shea Doherty, accompanied by Anne Sweeney, the Manager at the Burlington, Massachusetts, Casual Corner, visited Fashions on Tremont, 151 Tremont Street, Boston, Massachusetts. Ms. Sweeney advised that at Fashions on Tremont she observed the following Casual Corner clothes for sale at that store:

8 Newsport skirts, valued at $50, for sale at $34 each:

12 Jenniffer blouses, valued at $40, for sale at $20 each;

12 organically grown sweaters, valued at $35, selling for $19.

Ms. Sweeney further advised that she also observed approximately 100 Jennifer Reed cotton knit vests and two down ango-

APPENDIX—Continued

ra sweaters for sale in her Casual Corner Store for $25 and $60, which were for sale at Fashions on Tremont for $19 and $40, respectively.

Ms. Sweeney advised that she was inside Fashions on Tremont for approximately 10 to 15 minutes and observed approximately $6,000 in Casual Corner merchandise at that time. Ms. Sweeney further advised that the clothing labels Newsport, New Sport and Jenniffer are exclusive Casual Corner labels and should not be for sale at Fashions on Tremont. Ms. Sweeney also advised that the approximately 100 Jennifer Reed cotton knit vests and 2 down angora sweaters had their labels removed, but she positively identified them as having been made for sale by Casual Corner Stores only.

5. On September 27, 1984, a check with the Massachusetts Secretary of State Office, Boston, Massachusetts, revealed the following information for Fashion Apparel Distributors, 191 Revere Street, Revere, Massachusetts: President and Clerk, Carl Fuccillo; Treasurer, Fred Champa. Fashions on Tremont, 151 Tremont Street, Boston, Massachusetts, was listed as having the address of 191 Revere Street, Revere, Massachusetts, and Paul J. Graf was the President, Treasurer and Clerk.

6. On September 25, 1984, the confidential informant also advised me that entry could not be made through the front door at 191 Revere Street, Revere, Massachusetts, due to a security system being operated from inside that establishment. The confidential informant further advised me that only people who are known to the occupants can be buzzed in through the front door. The confidential informant further advised me that "it" had been inside the premises of 191 Revere Street, Revere, Massachusetts, and 5 Fayette Street, Milford, Massachusetts, and "it" had observed Casual Corner women's clothing which "it" knows to be stolen. "It" stated that a friend of "it's" telephoned Women's Specialty Retailing Group in Enfield, Connecticut, on or about September 18, 1984, and asked if they were missing any loads of clothing. When the officials answered affirmatively, the friend hung up the telephone.

7. On or about September 19, 1984, I was telephoned by Thomas Carney of Women's Specialty Retailing Group, Enfield, Connecticut. He informed me that he had received a telephone from a "Thomas Henderson" on the previous day asking if they were missing any clothing. When he answered that they were missing a couple of truckloads, the caller hung up the telephone.

8. Surveillances instituted by me on September 26, 1984 and September 27, 1984, at Fashion Apparel Distributors, revealed that there is a security-type door where individuals ring the bell and are buzzed into the premises.

9. On September 27, 1984, during a surveillance at Fashion Apparel Distributors, 191 Revere Street, Revere, Massachusetts, Special Agent Edward F. Clark observed a Blue Van belonging to Fashion Apparel Distributors being loaded at 8:00 A.M. Special Agent Edward F. Clark followed this van to Filene's warehouse, Somerville, Massachusetts, then to a warehouse at 5 Fayette Street, Milford, Massachusetts, where the driver went inside. Special Agent Clark and Mat Cronin observed several racks of hanging women's clothing inside that address through an open garage door on Fayette Street.

---

LAWRENCE FRISOLI
Special Agent
Federal Bureau
of Investigation

Subscribed and sworn to before me on this ———— day of ————————, 1984.

---

ROBERT J. DeGIACOMO
U.S. Magistrate

ORDER

In accordance with memorandum filed this date, it is ORDERED:

The defendant's motion to suppress is granted.