**UNITED STATES of America,
Appellant,**

v.

**Carl A. FUCCILLO,
Defendant, Appellee.**

**No. 86–1577.**

United States Court of Appeals,
First Circuit.

Argued Nov. 3, 1986.

Decided Jan. 9, 1987.

Paul F. Healy, Jr., Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellant.

Sandra L. Hautanen with whom Barry M. Haight and Buckley, Haight, Muldoon, Jubinville & Gilligan, Milton, Mass., were on brief for appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

TIMBERS, Circuit Judge:

The United States ("government") appeals from an order entered May 9, 1986 in the District of Massachusetts, 634 F.Supp. 358, Andrew A. Caffrey, Chief Judge, granting the motion of Carl A. Fuccillo ("appellee") to suppress all articles of clothing and other articles seized during the execution on September 28, 1984 of three search warrants at premises owned by appellee. The court held that the warrants were constitutionally deficient in their failure to describe the goods to be seized with sufficient particularity, as required by the Fourth Amendment. The court held, further, that the "good faith" exception to the exclusionary rule, as delineated in *United States v. Leon*, 468 U.S. 897 (1984), was inapplicable to the instant case because the agents had not acted in good faith within the meaning of *Leon*.

On appeal, the government argues that the description set forth in the warrants was sufficiently particular to pass constitutional muster. In the alternative, the government asserts that, even if the description was overly broad, the remedy of suppression is not justified because the agents' actions were objectively reasonable and taken in good faith. We hold that the warrants in question did not meet the particularity requirements of the Fourth Amendment. We also hold that suppression of the evidence seized was appropriate and decline the government's invitation to apply the good faith exception to the Fourth Amendment exclusionary rule.

We affirm.

### I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

On September 28, 1984, Federal Bureau of Investigation ("FBI") agents executed three separate, but identical, search warrants which authorized the seizure of:

> "[C]artons of women's clothing, the contents of those cartons, lists identifying the contents of the cartons, and control slips identifying the stores intended to receive these cartons, such items being contraband and evidence of a violation of Title 18, United States Code, Section 659, Possession of Goods Stolen from Interstate Shipments."

The premises which were searched were: (1) Fashion Apparel Distributors ("FAD"), a wholesale distributor located in Revere, Massachusetts; (2) a warehouse in Milford, Massachusetts ("Milford warehouse"); and (3) a retail clothing store located in downtown Boston, known as Fashions on Tremont ("FOT"). All three premises are owned by appellee.

In issuing the three warrants, the magistrate relied exclusively on a single affidavit submitted by FBI Agent Frisoli. The affidavit stated that two trailers containing 839 cartons of women's clothing, with an approximate value of $500,000, had been stolen from Women's Specialty Retailing of Enfield, Connecticut, sometime between August 10 and 13, 1984. Attached to the cartons of clothing were shipping slips

*Of the Second Circuit, sitting by designation.

which contained information concerning the stores which were to receive the goods, including the store name, address and number. The affidavit stated that Casual Corner stores were among the stores which were to receive the cartons of women's clothing.

The affidavit further stated that on September 25, 1984 a confidential informant had advised Frisoli that stolen women's clothing would be found at FAD, FOT and the Milford warehouse; that "it" had been inside the Milford warehouse and FAD; and that while inside these premises "it" had observed Casual Corner women's clothing which "it" knew to be stolen.

The affidavit next related that an FBI agent, accompanied by a Casual Corner store manager, visited FOT on September 26, 1984. The Casual Corner manager, after spending approximately fifteen minutes inside FOT, informed the FBI agent that she had observed the following clothes for sale at FOT, which she stated were manufactured exclusively for Casual Corner stores and should not have been offered for sale elsewhere: eight Newsport skirts, twelve Jenniffer blouses and twelve Organically Grown sweaters. She further informed the FBI agent that she had observed one hundred Jennifer Reed cotton knit vests and two down angora vests, which, although their labels had been removed, she positively identified as having been made for Casual Corner.

On September 28, 1984 the warrants were executed by three separate teams of FBI agents. Seized from FAD were twenty-nine cartons of Casual Corner women's clothing, one hundred and eleven Sassoon dresses, one hundred and thirty men's corduroy sport jackets, and four empty boxes with Casual Corner markings. Prior to the search of the Milford warehouse, while appellee was present, the FBI agent in charge asked appellee to identify which, if any, of the goods "were legitimate." When appellee declined to reply, the agents seized the entire contents of the Milford warehouse. Empty cartons, papers and receipts also were confiscated from the Milford warehouse. At FOT, apparel was removed from clothing racks and placed in approximately seven bags, which then were seized.

On January 22, 1986, appellee was indicted by a grand jury and charged with one count of receipt of stolen goods in interstate commerce, in violation of 18 U.S.C. § 2315 (1982); one count of interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314 (1982); and four counts of possession of goods stolen from interstate shipment, in violation of 18 U.S.C. § 659 (1982). The indictment was based in part on the evidence seized from the three premises owned by appellee. On February 28, 1986 appellee moved to suppress all evidence seized. A hearing was held before Chief Judge Caffrey on March 3, 1986. On May 9, 1986 Chief Judge Caffrey filed a memorandum and order granting appellee's motion to suppress. On June 5, 1986 the government took the instant appeal pursuant to 18 U.S.C. § 3731 (1982).

For the reasons stated below, we affirm the order of the district court suppressing the evidence seized from FAD, the Milford warehouse and FOT.

## II.

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized". Thus general warrants are prohibited by the Bill of Rights. "[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings...." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). In requiring a particular description of articles to be seized, the Fourth Amendment " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (*quoting Marron v. United States*, 275 U.S. 192, 196 (1927)).

We recognize, however, that the overriding principle of the Fourth Amendment is one of reasonableness and on occasion have accepted general descriptions in warrants, holding that such descriptions are not always constitutionally infirm. *E.g., United States v. Cortellesso*, 601 F.2d 28 (1st Cir.1979) (general description upheld due to practical impossibility of precise description); *Vitali v. United States*, 383 F.2d 121 (1st Cir.1967) (general description permissible due to common nature and non-uniqueness of items to be seized). Such general descriptions are permissible only in "special contexts in which there [is] substantial evidence to support the belief that the class of contraband [is] on the premises and in practical terms the goods to be described [can] not be precisely described." *Montilla Records of Puerto Rico v. Morales*, 575 F.2d 324, 326 (1st Cir.1978). In *United States v. Klein*, 565 F.2d 183 (1st Cir.1977), we set forth two tests which in particular circumstances may help to illuminate whether this principle is satisfied: first, the degree to which the evidence presented to the magistrate establishes reason to believe that a large collection of similar contraband is present on the premises to be searched, and, second, the extent to which, in view of the possibilities, the warrant distinguishes, or provides the executing agents with criteria for distinguishing, the contraband from the rest of an individual's possessions. In this case, we hold, with respect to all three sets of seizures, that the warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.

### A.

We begin with the seizure of clothing, papers and boxes from FAD and the Milford warehouse.

The instant warrants contained no explanation as to how the executing agents were to differentiate cartons of stolen women's clothing from legitimate goods at either location. This failure was held to be fatal in both *Klein, supra,* 565 F.2d at 188–190 and *Montilla Records, supra,* 575 F.2d at 326—especially in view of the fact that the defects could have been cured had the warrants in both cases set forth information clearly available to the government for distinguishing the contraband. As indicated below, we are faced with a like situation in the instant case.

In *Klein*, we held invalid a mass seizure of tapes and tape cartridges under a warrant authorizing the seizure of "unauthorized 'pirate' reproductions". We did so because information detailing the background and expertise of the agent in the field of detecting pirate tapes, indicia of illegality such as crudeness of tape jackets, obscurity of recording company names, and the like, while available to the government, was not presented to the magistrate prior to the issuance of the warrant. "In light of the information available to the agents which could have served to narrow the scope of the warrant and protect the defendants' personal rights, the warrant was inadequate." *Klein*, 565 F.2d at 190.

In *Montilla Records*, the only product which the affidavit suggested was illegally manufactured was Motown records, easily differentiated from the entire inventory by their labels. And yet the warrant did nothing more than direct the agents to seize all "unauthorized or illegal recordings." We refused to uphold the seizure:

"In sum, were this seizure to be upheld, we would signal a rule allowing general warrants with only generic descriptions to issue solely on evidence that particular and easily differentiated contraband of that generic class was to be found on the premises to be searched. This would be an unnecessary and dangerous dilution of search warrant requirements."

*Montilla Records*, 575 F.2d at 327.

In the instant case the FBI clearly could have obtained specific information for presentment to the magistrate and placement in the warrant which would have enabled the agents executing the FAD and Milford warehouse searches to differenti-

ate contraband cartons of women's clothing from legitimate ones. Although the affidavit stated that attached to the stolen cartons was "information identifying the store that was receiving the goods, including the store number, name and address", apparently no effort was made by the agents to obtain this information from Women's Specialty Retailing and include it in the warrant. The warrant, directing the agents to seize "cartons of women's clothing" instead could have directed the agents to "cartons of women's clothing from Casual Corner stores" or "cartons from Women's Specialty Retailing." As in *Montilla Records*, the executing agents in the instant case had no "physical criteria or detailed description in the warrant to enable them to determine what they might lawfully seize...." *Montilla Records, supra*, 575 F.2d at 326–327. As a result, "[i]t is obvious from the conduct of the agents who participated in the search[es] that they did not consider their authority to be limited...." *Id.* at 326. With no guidance in the warrants, the agents seized racks of women's clothing, racks of men's clothing, bins of clothing, papers and receipts. Indeed, they removed the *entire contents* of the Milford warehouse.

We hold that the government failed to meet the standards required by *Klein* and *Montilla Records*.

### B.

As for the seizure of clothing from FOT, we hold that, in view of the information available to the FBI and the magistrate prior to the issuance of the warrant, the general description found in this warrant renders it constitutionally unacceptable.

It is beyond cavil that the warrant for the search of FOT could have been written with precision to assure that appellee's personal rights would remain inviolate. The Casual Corner store manager had given the FBI a very detailed list of articles she had observed at FOT. They were manufactured exclusively for Casual Corner stores. Instead of identifying these articles of clothing with specificity, thus limiting the scope of the seizure, the warrant merely directed the agents to search, and seize, indiscriminately.

In light of our holding that the warrant issued by the magistrate for the search of FOT was so glaringly deficient, we find it neither necessary nor appropriate to scrutinize the warrant any further.

### C.

The government argues that, even if the three search warrants were constitutionally inadequate because of their failure to specify the goods to be seized with sufficient particularity, the district court erred in refusing to apply the good faith exception to the exclusionary rule enunciated in *United States v. Leon, supra*, 468 U.S. at 913. We disagree.

In *Leon*, the Supreme Court reexamined the purposes of the exclusionary rule and the propriety of its application in cases where officers have relied on a subsequently invalidated search warrant. The Court concluded that the purpose of the rule only rarely would be served by applying it in such circumstances. Accordingly, the modification known as the good faith exception to the exclusionary rule was created. This good faith exception, however, is grounded in an objective standard of reasonableness. As a result, an officer is required to have a "reasonable knowledge of what the law prohibits." *Id.* at 920 n. 20. The good faith exception, therefore, will not be applied unless the officers executing search warrants, at the very minimum, act within the scope of the warrants and abide by their terms.

Applying these principles to the searches and seizures at FAD and the Milford warehouse, it is clear to us that the agents executing the warrants did not act in good faith as that term was explained in *Leon*. Armed with warrants already drawn in the broadest manner, the agents exceeded even that authority. In executing the search warrant at FAD, the agents seized, in addition to the authorized cartons of *women's* clothing, racks of clothing, empty boxes,

and, most disturbingly, two racks of *men's* clothing. The *entire contents* of the Milford warehouse were seized. The good faith exception "assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant." *Id.* at 918 n. 19. In view of the facts before us, we cannot make that assumption. We decline, therefore, to apply the good faith exception.

■ Suppression is still an appropriate remedy when "the officers were . . . reckless in preparing their affidavit. . . ." *Id.* at 926. We hold that, with regard to the affidavit prepared for the warrant authorizing the search of FOT, and the warrant itself, the agents were reckless in not including in the affidavit information which was known or easily accessible to them. The agents here simply did not "take every step that could reasonably be expected of them". *Massachusetts v. Sheppard*, 468 U.S. 981 (1984). The affidavit contained statements which indicated that the cartons of stolen clothing could have been identified easily through mailing labels attached to the cartons; yet the agents took no steps to obtain the information disclosed on those labels. The affidavit stated that the Casual Corner manager had given, with much specificity, a list of clothing she had observed while at FOT which she knew was manufactured exclusively for Casual Corner; yet no where in the warrant does this list appear. "[A] warrant may be so facially deficient— i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid." *United States v. Leon, supra,* 468 U.S. at 923. This is just such a warrant.

We hold that the district court correctly declined to apply the good faith exception.

### III.

To summarize:

We affirm the order of the district court suppressing the evidence seized from FAD, the Milford warehouse, and FOT. We hold that the warrants authorizing the three searches were constitutionally impermissible in their failure to satisfy the particularity requirements of the Fourth Amendment. We also hold that the good faith exception to the Fourth Amendment exclusionary rule properly was not applied by the district court in the instant case because the FBI agents did not act with objective good faith within the meaning of *United States v. Leon, supra,* 468 U.S. at 897.

Affirmed.