**UNITED STATES of America, Plaintiff,**

**v.**

**Leoncio L. DIAZ, a/k/a Leonel Diaz, Marta Diaz, Jorge L. Cabrera, Alfredo Matos Rivera, Defendants.**

**Crim. No. 86–038 (JP).**

United States District Court, D. Puerto Rico.

Feb. 24, 1987.

Juan A. Pedrosa, Asst. U.S. Atty., U.S. Attorney's Office, Hato Rey, P.R., for plaintiff.

Harry Anduze Montano, Santurce, P.R., for Leoncio Diaz and Marta Diaz.

John M. Garcia, Hato Rey, P.R., for Jorge L. Cabrera.

Julio Morales Sanchez, Santurce, P.R., for Alfredo Matos.

## OPINION AND ORDER

PIERAS, District Judge.

The Court held a hearing on December 24, 1986, to consider the government's opposition to the Magistrate's Report and Recommendation. The Magistrate recommended suppression of business records seized from defendant for two reasons. First, the warrant lacked probable cause to seize documents since the beginning of the business when fraud was not suspected until eight months later. Second, the warrant did not particularly describe the items to be seized. Pursuant to 28 U.S.C.

§ 636(a), the Court makes the following de novo findings.

I.

On June 4, 1984, upon the affidavit of Special Agent Francis P. Coffey, Jr., of the Federal Bureau of Investigation (FBI), the Magistrate issued a search warrant for the offices of Isla Rica Sales, Inc., owned and operated by defendants Leoncio and Marta Díaz, and Jorge Cabrera. Based on information provided by employees of Isla Rica, the FBI suspected possible violations of 18 U.S.C. sections 1343 (wire fraud), 1341 (mail fraud), and 201 (bribery of a public official). The FBI suspected that the defendants were paying off a United States Department of Agriculture (USDA) Inspector, defendant Alfredo Matos Rivera, to sign USDA forms, falsely condemning certain fruits and vegetables as unfit for human consumption. Allegedly, the company would then file insurance claims on the lost produce while, at the same time, selling it as usual.

The information supplied by the Isla Rica employees and used by the FBI in support of the affidavit indicated that defendant Matos had received cash payments from the company's petty cash fund on February 1, 1984, and April 26, 1984. The information also indicated that defendant Matos had made inspections of certain shipments of produce on October 5 and 10, 1983, resulting in the dumping of these shipments. Another document submitted by the FBI and dated November 9, 1983, purported to show the profit on one lot through this alleged fraud.

Based on this information, the Magistrate issued a warrant authorizing a search of the offices of Isla Rica, and the seizure of

> certain books and records of Isla Rica Sales, Inc., since February 1, 1983, to the present, evidencing a violation of Title 18, U.S. Code, sections 1343, 201 and/or 1341, to include:
>
> a) All records pertaining to purchases, including, but not limited to, shipping invoices, correspondence regarding claims for damage or loss, inspection reports and dump certificates;
>
> b) All sales records, including, but not limited to, sales control sheets (listing sales by customer, product, lot); or "conduces;" invoices, sales tickets or receipts;
>
> c) All documents pertaining to claims or notice of damage or loss to any product;
>
> d) All cash tickets, vouchers, disbursement records, and supporting documentation and accounting records of any type associated with any type of cash funds maintained by Isla Rica Sales, Inc., or its principals, including, but not limited to the petty cash fund;
>
> e) All bank account records, including, but not limited to, bank statements, cancelled checks, check registers, check vouchers or deposit tickets associated with any checking or savings account maintained by Isla Rica Sales, Inc.;
>
> f) All account payable records, including correspondence, ledgers, invoices and other documents pertaining to past or present accounts payable; and
>
> g) The cash receipts journal.

The FBI executed this warrant on June 7, 1984, and made return to the Magistrate on June 13, 1984, indicating that a copy of the warrant and a receipt for the items seized was left with defendants "Leonel" Díaz. At the hearing held on December 24, 1986, the Special Agent admitted the warrant left with the defendant did not have the affidavit attached and that the Special Agent in charge of executing the warrant possessed the only copy of the affidavit at the premises during the search. Defendants Leoncio and Marta Díaz, and Jorge Cabrera moved to suppress for the above stated reasons.[1]

1. The Court sua sponte reconsiders its Order of November 24, 1986, including defendant Matos in the disposition of this suppression matter. Defendant Matos has no standing to challenge the warrant because he had no reasonable expectation of privacy in the office files of Isla Rica. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *United States v. Goshorn,* 628 F.2d 697, 700 (1st Cir.1980). Accordingly, the Court REVERSES itself as to Matos' inclusion. The Court does not, at this time, rule on the admissibility of evidence seized

II. *Lack of Probable Cause*

The only evidence of fraud presented to the Magistrate indicated that a fraud may have been perpetrated concerning lot numbers 1135 and 1131. Defendant Matos inspected this lot on October 5, 1983, and issued a dumping certificate on October 10. Fees for USDA inspections were paid by check at an hourly rate of $42.00, but the government presented copies of Isla Rica petty cash receipts to Matos of $240.00 and $300.00, dated February 1, and April 26, 1984, respectively. The government also submitted a copy of the cover of a file folder from lot 1311 apparently indicating the profit made through the scam. That copy bore the date November 4, 1983.

Thus, the government presented evidence of alleged fraudulent conduct that may have dated back as far as October 5, 1983. The supporting affidavit noted that Isla Rica commenced operations in February 1983. The government presented no evidence of fraudulent conduct predating October 5, 1983, and did not even present an affidavit indicating that Isla Rica was in business from the first day of February. Information provided by Isla Rica and included in the affidavit indicated that defendant Matos was on the take. No other USDA inspector was named, although it was noted that other inspectors may have accompanied Matos and that those other inspectors may have conducted the USDA inspections. The evidence of cash payments to USDA Inspectors, however, pointed only to Matos.

■ Even fully accepting the credibility of the Isla Rica employees, it cannot be said that the affidavit showed probable cause that fraudulent activity occurred at any time between February 1 and October 5, 1983. The affidavit further failed to show probable cause for any fraudulent activity by any USDA Inspector other than defendant Matos. There was, therefore, no probable cause to seize records prior to October 5, 1983, and no probable cause to seize any document that did not involve defendant Matos. *See e.g., In re Lafayette Academy, Inc.,* 610 F.2d 1, 5–6 (1st Cir. 1979) (seizure of particularly described documents may still fail to meet probable cause standard where described documents fall outside of alleged fraud).

■ This circuit has adopted the remedy of partial suppression where portions of the warrant are supported by probable cause. *United States v. Riggs,* 690 F.2d 298 (1st Cir.1982). In this case, such a remedy would be inappropriate. To allow the government to now sift through the documents seized to conform to whatever probable cause did support the warrant would be to retroactively authorize a general search. The Fourth Amendment clearly prohibits this.

III. *Lack of Particularity*

■ The Fourth Amendment provides that "no warrant shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." The amendment was added to our Constitution to further distinguish our republic from the governance of our deposed British overlords, who regularly used general warrants to ferret out tax revenues without regard to personal rights of the citizenry. Warrants in America, although still acknowledged as a necessary law enforcement tool, had to be circumscribed.

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

from Isla Rica against this defendant, only that the disposition as to the other defendants does not affect Matos.

Warrants that fail to particularly describe what is to be seized, and specifically directing the executing officer as to how to determine whether an item fits the particular description, are constitutionally infirm general warrants. In *United States v. Guarino,* 729 F.2d 864 (1st Cir.1984) (en banc), the warrant under examination was supported by an affidavit purportedly providing probable cause that three magazines were obscene materials in interstate commerce. The warrant, however, authorized seizure of materials "of the same tenor" as those described in the affidavit. This left the discretion to seize wholly within the hands of the executing officer. The warrant failed, then, to particularly describe the things to be seized. In *United States v. Diamond,* No. 86–1380 (1st Cir. Jan. 14, 1987), the Government attempted to seize child pornography. The warrant, however, left in the discretion of the executing officers the decision whether any of the materials actually depicted minors in violation of 18 U.S.C. section 2252(a). The warrant, for this reason, lacked particularity and suppression was ordered.

The problem of lack of particularity is exacerbated when the affiant possesses all the information necessary to particularly describe the things to be seized but fails to do so. In *United States v. Fuccillo,* 808 F.2d 173 (1st Cir.1987), the government knew that the stolen goods it was looking for were identifiable by the brand and styling of Casual Corners Stores. The warrant, however, authorized the seizure of

> cartons of women's clothing, the contents of those cartons, lists identifying the contents of the cartons, and control slips identifying the stores intended to receive these cartons, such items being contraband and evidence of a violation of ... Possession of Goods Stolen from Interstate Shipments.

*Fuccillo,* at 174. In clarifying the particularity test set out in *United States v. Klein,* 565 F.2d 183 (1st Cir.1977), the *Fuccillo* court set out a two-prong analysis:

> first, the degree to which the evidence presented to the magistrate establishes reason to believe that a large collection of similar contraband is present on the premises to be searched, and second, the extent to which, in view of the possibilities, the warrant distinguishes, or provides the executing agents with criteria for distinguishing, the contraband from the rest of an individual's possessions.

*Fuccillo,* at 176. The agents in *Fuccillo* executed a warrant asking them only to distinguish between items that were "evidence of a violation" and items that were not. This was hardly a "criteria for distinguishing." The agents "had no 'physical criteria or detailed description in the warrant to enable them to determine what they might lawfully seize.'" *Fuccillo,* at 177, *quoting, Montilla Records v. Morales,* 575 F.2d 324, 326–27 (1st Cir.1978). In fact, at one location where the agents executed the warrant, they seized the entire contents of a warehouse. The *Fuccillo* court held that "in view of the information available to the FBI and the magistrate prior to the issuance of the warrant, the general description found in this warrant renders it constitutionally unacceptable." *Fuccillo* at 177.[2]

█ We are faced with a similar situation here and the warrant in the instant case fails both prongs of the *Fuccillo-Klein* analysis. First, the evidence presented to the magistrate did not allege that the fraudulent activity permeated Isla Rica, nor that any other USDA Inspector besides Matos was involved. There was, therefore, no evidence that a large collection of evidence similar to that provided by the FBI would be present. Second, the possibilities for distinguishing legitimate business records at Isla Rica from fraudulent ones were obvious: authorize the seizure of any records of condemned produce, or any records indicating defendant Matos inspected the lot, or the records for any lot

2. That the items to be seized in *Fuccillo* were stolen goods while the material in the instant case is business records does not alter the analysis. *See, e.g., United States v. Hershenow,* 680 F.2d 847 (1st Cir.1982).

on which an insurance claim was lodged, or all three. The warrant, however, authorized the seizure of "all records pertaining to purchases, ... all sales records, ... all cash tickets, ... all bank account records, ... all accounts payable records ... and, the cash receipts journal." The warrant, simply put, authorized the seizure of every business record ever produced by Isla Rica. This was an unconstitutional general search of the first order. The only distinguishing criterion was that the seized material be evidence of "a violation of Title 18, U.S. Code, Sections 1343, 201 and/or 1341." This was the same manner of nebulous description found invalid in *United States v. Abrams,* 615 F.2d 541, 543 (1st Cir.1980). The warrant was unconstitutional and the evidence obtained by it must be suppressed.

IV. *Good Faith Exception*

Nevertheless, the government wishes the Court to apply the "good faith" exception to the exclusionary rule enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* court noted that

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable case.

*Leon,* 468 U.S. at 926, 104 S.Ct. at 3422. Here, it cannot be said that any agent could harbor an objectively reasonable belief that probable cause existed for that period of time covered by the warrant for which no allegation of fraudulent activity was made. It is also clear that, absent an allegation that Isla Rica made its money only by dumping all its produce fraudulently, the preparation of the affidavit and warrant authorizing the seizure of all business records was reckless. Applying the "good faith" exception is inappropriate in this case.

V.

For the reasons elucidated above, defendants' Motion to Suppress is GRANTED.

IT IS SO ORDERED.