**UNITED STATES of America,**
**Plaintiff,**

v.

**John Olmo TORRES, et**
**als., Defendant(s).**

**Criminal No. 01–667(JAG).**

United States District Court,
D. Puerto Rico.

Feb. 14, 2002.

---

**2.** The Court was also unable to find any case-law permitting a defendant to present such evidence at a detention hearing.

Carlos Noriega–Rodriguez, San Juan, PR, for plaintiff.

Sania I. Torres–Pabon, Daniel Vaccaro, U.S. Attorney's Office, San Juan, PR, for defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Defendant John Olmo Torres ("Olmo") was charged with various offenses, including possession with intention to distribute cocaine and heroin. During the course of the investigation, the Court (Arenas, Magistrate Judge) authorized the search and seizure of Olmo's residence located at Sector Chiclan H, Caimito, Puerto Rico. The Magistrate Judge issued the warrant based upon an Application and Affidavit signed by Agent Jose Ruiz ("Ruiz"), on September 6, 2001. Olmo filed a motion to suppress the evidence obtained from the fruits of the search and seizure. (Dockets # 17). Olmo argues that the warrant was issued without a sufficient showing of probable cause.

## PROCEDURAL BACKGROUND

On September 6, 2001, at 7:30 p.m., Agent Ruiz of the U.S. Bureau of Alcohol, Tobacco and Firearms (ATF), executed an Application and Affidavit for the issuance of a search warrant for the first floor of a two story structure in Sector Chiclan II, Caimito Ward, Puerto Rico, before Magistrate Judge Justo A. Arenas (Case No. 01–335M). The dwelling at that location is the Defendant's residence. *See* Government's Exhibit 1 and 2.

The Magistrate Judge approved the Application, supported by the Affidavit, and issued the Search Warrant on September 6, 2001. *See* Government's Exhibit 3. The warrant authorized the search to be executed "in the daytime—6:00 A.M. to 10:00 P.M." on or before September 15, 2001. The warrant authorized the agents to search for "firearms, ammunition and documents pertaining to the ownership/occupancy of the residence, records to include telephone records, and documents pertaining to illegal firearms and narcotics possession and trafficking, to include ledgers photographs, bank records electronic equipment such as beepers cellular phone etc." *See* Government's Exhibit 3.

On September 7, 2001, the warrant was executed. Pursuant to the warrant, law enforcement officers seized various items, including narcotics and firearms. On September 26, 2001, a Return of the warrant listing the property seized was filed with Magistrate Judge Jesus A. Castellanos. *See* Government's Exhibit 4. As indicated in the Return, a portion of the seized items were taken from inside Olmo's residence and a portion were seized "in the rear yard area." *See* Government's Exhibit 4. The "rear yard area" included a chicken coop located in Olmo's property, and a shed in the rear yard area of the adjacent property.

## DISCUSSION

Olmo asserts that the Government violated his Fourth Amendment rights when it searched without a warrant the shed located in the rear yard area of the adjacent property, owned by Miguel Cordero Ruiz ("Cordero"). Olmo maintains that the items found in the shed should be suppressed because the agents obtained an unlawful third-party consent from Juan Torres Huertas ("Torres") to search the adjacent property. *See* Defendant's Motion at 1–3 and Defendant's Memorandum at 1–2. The Fourth Amendment prohibits a warrantless search of an individual's property. *See Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148, (1990). "The prohibition does not apply, however, to situations where voluntary consent has been obtained, either from the individual whose property is searched, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854,(1973), or from a third party who possesses common authority

over the premises." *Id.* Law enforcement officers, however, may not always rely on a person's consent to enter premises, even when the consent is accompanied by an explicit assertion that the person lives there. The consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *See Illinois v. Rodríguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) citing: *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If not, the entry without a warrant is unlawful.

Prior to discussing the substantive issues regarding Torres' consent, the Court must address an argument advanced by the government: Olmo's "standing" to challenge Torres' consent. Essentially, the government argues that because Fourth Amendment rights cannot be asserted vicariously, Olmo is without standing to challenge Torres' consent. The Fourth Amendment protects persons against unreasonable searches of "their persons [and] houses," and thus indicates that it is a personal right that must be invoked by an individual. The proper inquiry is not, however, whether Olmo has standing to claim the Fourth Amendment protection. *See Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373, (1998) (citing *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387, (1978)). Instead, the proper inquiry is whether Olmo, personally, has an expectation of privacy in the place searched. *See Id.* at 143–44, 99 S.Ct. 421; *United States v. Sanchez,* 943 F.2d 110, 112 (1st Cir. 1991). *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).

■ Olmo bears the burden of proving a reasonable expectation of privacy. *United States v. Lewis,* 40 F.3d 1325, 1333 (1st Cir.1994); *United States v. Bouffard,* 917 F.2d 673, 675 (1st Cir.1990). The elements the Court should consider in making the "reasonableness" determination are Olmo's ownership, possession, control, ability to exclude from the premises, and prior use of the area searched or property seized. *See U.S. v. Cardona–Sandoval,* 6 F.3d 15, 21 (1st Cir.1993); *United States v. Lochan,* 674 F.2d 960 (1st Cir.1982). Here Olmo failed to meet his legal burden. Olmo has not proffered sufficient evidence to show that he had control over Cordero's property. Olmo was not a "guest" of Cordero at the time the agents entered the rear yard. There was no evidence that Olmo had previously obtained Cordero's permission to keep any items inside Cordero's shed. There is no evidence that Olmo had the ability to exclude third parties from entering Cordero's property. Thus, Olmo could not have had any reasonable expectation of privacy in the shed or its contents. Accordingly, Olmo has no standing to assert an alleged violation of his Fourth Amendment rights.

■ Olmo also lacks standing to request a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and challenge the third party consent given by Torres. Only Cordero would have the right to challenge Torres' consent. He has not done so, however. In any event, the issue of the third party consent is irrelevant because Olmo has failed to prove a reasonable expectation of privacy in the shed or the items seized from the shed on his neighbor's property and, therefore, has no standing to claim that they were illegally searched or seized. Olmo's request for a hearing pursuant to *Franks* is, therefore, **DENIED.**

In the alternative, Olmo avers that the search warrant issued by Magistrate Judge Arenas was unreliable inasmuch as it was not supported by probable cause because the information contained in the Affidavit from the confidential source ("CS") was not corroborated by law enforcement officers. Olmo's Memorandum at 2–4.

It is well established that a search warrant, the warrant application and affidavit "must demonstrate probable cause to believe that a particular person has committed a crime—'the commission element'—and that enumerated evidence relevant to the probable criminality likely is located at the place searched—'the nexus element.'" *See United States v. Zayas–Diaz*, 95 F.3d 105, 110–111 (1st Cir. 1996), *citing, United States v. Fuccillo*, 808 F.2d 173, 175 (1st Cir.1987). *See also Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Court must accord "considerable deference" to the probable cause determination made by the issuing magistrate. *Zayas–Diaz*, 95 F.3d at 111.

The First Circuit has adopted a "totality of the circumstances approach," and held that "in order to establish probable cause, the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." *See United States v. Scott*, 83 F.Supp.2d 187, 190–191 (D.Mass.2000), *quoting, United States v. Feliz*, 182 F.3d 82, 86 (1st Cir.1999). Here there was ample direct evidence provided by a reliable CS and corroborated by law enforcement agents to the extent necessary to demonstrate probable cause to believe that drug trafficking, was likely to be located at Olmo's residence. *United States v. Feliz*, 182 F.3d 82 (1st Cir.1999).

It is evident from the Affidavit that the CS had given local authorities information in eight prior cases. The information the CS gave in these previous cases led to charges being filed against the perpetrators of those crimes. *See* Government's Exhibit 2 at 1.

Olmo suggests that there was no corroboration. His arguments are unsupported, however, for there is no evidence that law enforcement agents corroborated the existence of the location by traveling to it and taking photographs. *See* Government's Exhibit 2 at 4–5. The CS was also interviewed by federal authorities to obtain details about Olmo and his residence. The CS provided a detailed description of the place to be searched (the spatial layout of the residence and the specific room in which Olmo resided within the structure) and the specific types of firearms, types and amounts of narcotics, type of containers in which the firearms were stored (black bags), and the location on the property (chicken coop) in which they were probably located. *See Zayas–Diaz*, 95 F.3d at 112. *See also United States v. Soule*, 908 F.2d 1032, 1039 (1st Cir.1990). The CS had been present at the location just three days prior to his interview. *See* Government's Exhibit 2 at 1. *See United States v. Taylor*, 985 F.2d 3, 5 (1st Cir. 1993).

The CS also provided verified information that Olmo was a drug dealer controlling a nearby drug point through the use of firearms. *See* Government's Exhibit 2 at 2. The CS further stated that he was involved in illegal activities with Olmo. The fact that the CS provided statements against his/her penal interests also enhances the credibility of the reports. *See United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir.1996).

## CONCLUSION

The Application and the Affidavit on their face contain sufficient facts provided by a reliable CS and corroborated by law enforcement agents sufficient to demonstrate probable cause to believe that drug trafficking was likely occurring at Olmo's residence. Accordingly, Olmo's motion to suppress (Dockets # 17) is **DENIED.**

IT IS SO ORDERED.