# United States Court of Appeals
## For the First Circuit

No. 06-2586

UNITED STATES OF AMERICA,

Appellee,

v.

JUSTIN WOODBURY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Schwarzer,* Senior District Judge.

Michael B. Whipple, with whom Thomas F. Hallett Law Offices, P.A. was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

December 26, 2007

_____

* Of the Northern District of California, sitting by designation.

**TORRUELLA**, **Circuit Judge**. On September 5, 2005, federal authorities obtained a search warrant for the home of Justin Woodbury located at 7 Leisure Lane, Windham, Maine, "believed to be" the bottom-floor left apartment. The warrant named Woodbury as the occupant and authorized a nighttime no-knock entry. Federal and local authorities, directed to his second-floor apartment by the occupant of the bottom-floor apartment, executed the warrant and seized a .40 caliber pistol and drug paraphernalia. Woodbury entered a plea of not guilty to a federal indictment for a single count of possession of a firearm by a prohibited person and filed a motion to suppress, alleging that for purposes of the Fourth Amendment, the warrant (1) lacked probable cause and (2) was insufficiently particular. Woodbury's suppression motion was denied, and he now appeals. After careful consideration, we affirm.

## I. Background

On May 5, 2005, Sgt. R. Michael Denbow, a state police officer, told federal agent Earnest MacVane that an informant had reported that he planned to deliver cocaine to Woodbury at an apartment on Lamb Street in Windham. Two days later, the informant stated that Woodbury had claimed to have purchased a .40 or .44 caliber pistol and even bragged that he was a convicted felon. The informant had previously provided the police with truthful information.

On September 9, 2005, Windham police office Robert Hunt stopped a speeding car. The driver was noticeably anxious and said that he had just come from Woodbury's apartment. He informed the police that Woodbury dealt in cocaine and possessed a .40 caliber handgun which he did not carry outside of his apartment. Based both on this information and that provided by the prior police informant in May, MacVane believed there was probable cause that Woodbury was trafficking at 7 Leisure Lane.

On September 9, 2005, a Maine state court judge granted MacVane's request for a search warrant. The person, place, or location to be searched read:

> #7 Leisure Lane Windham, Maine believed to be the bottom floor left apartment. Said structure is a white multi-unit dwelling with a covered front porch, and a grey shingled roof.

The warrant unmistakably identified the appellant in the warrant as "Justin WOODBURY/ DOB: 05-15-1981, White male 5'9" / 175 pound, with brown hair and blue eyes," and authorized a nighttime no-knock entry.

The warrant was based on a September 9 application and affidavit submitted by MacVane. The affidavit named Woodbury as the occupant of 7 Leisure Lane, but also described Woodbury's apartment as being on Lamb Street.[1] Attached to the affidavit was

---

[1] The reference to Lamb Street came from information the driver of the speeding car gave Hunt when he stopped the car as it was entering Route 35 from Lamb Street. Leisure Lane is the name of a

-3-

a black and white photograph of 7 Leisure Lane. The affidavit provided a rough physical description of Woodbury, but stipulated that it did not contain all of the information that MacVane possessed in relation to Woodbury's alleged cocaine trafficking.

That same evening, federal and local authorities attempted to execute the warrant at the location specified therein, which directed them to the bottom-floor left apartment at 7 Leisure Lane. Woodbury did not reside there. The agents were redirected by the unknown occupant of the bottom-floor left apartment to the second-floor left apartment, where the occupant believed Woodbury resided. After knocking and waiting approximately twenty to thirty seconds, the officers heard a commotion and movement inside of the apartment. The agents forced open the door and saw Woodbury run from the kitchen to the bedroom where they apprehended him. Pursuant to the warrant, the officers searched the apartment and found a .40 caliber pistol in a shoe box in the bedroom closet. The shoe box also contained a copy of a bail slip issued to Woodbury from a prior arrest which specified that one condition of his release was a prohibition on possessing firearms. Elsewhere in Woodbury's apartment, the police found drug paraphernalia laced with cocaine residue. MacVane read Woodbury his Miranda rights, which Woodbury chose to waive. Woodbury admitted to being the sole

driveway off of Lamb Street. It is clear from the application and the affidavit that the application was for a unit on Leisure Lane.

-4-

occupant of the apartment and to knowing that a gun was in his closet. He denied owning the gun but refused to disclose how he had acquired it. Woodbury was then arrested for possession of a firearm by a felon.

On March 31, 2006, Woodbury moved to suppress the evidence resulting from the search on three separate grounds: (1) the warrant did not authorize entry into the upstairs apartment that was actually searched; (2) regardless, there was no probable cause to search the Leisure Lane premises because the informants only connected Woodbury to Lamb Street; and (3) there was no probable cause because the informants' information was uncorroborated and unreliable.[2]

On May 24, 2006, the Magistrate Judge ("MJ") recommended that the district court deny Woodbury's motion to suppress. Addressing each argument in turn, the MJ found that (1) considered in a common sense manner, the warrant made clear that the apartment occupied by Woodbury was the target of the search; (2)"the references in the affidavit to an apartment on Lamb Street were sufficiently vague that it was reasonable to conclude that the Lamb Street apartment was the same as #7 Leisure Lane"; and (3) a sufficient number of factors were present to permit MacVane's conclusion that the informants' information was reliable. Finally,

---

[2]  On appeal, Woodbury does not directly challenge the informants' reliability.

the MJ concluded that even if the warrant was invalid, the good faith exception to the exclusionary rule would apply under United States v. Leon, 468 U.S. 897 (1984).

Woodbury then modified his suppression motion, alleging that the executing officers knowingly acted outside the scope of the warrant. In response, the MJ stated that when "most sensibly read," the warrant was "not so facially deficient that executing officers could not reasonably have presumed it to be valid." Accordingly, the MJ recommended that the motion be denied. On July 27, 2006, the district court entered an order adopting the MJ's report and recommendation. The district court's order concluded that the Leon good faith exception applied to this case and found that the warrant was legally executed.

## II.  Discussion

On appeal, Woodbury challenges the validity of the warrant and the district court's denial of his motion to suppress, contending that the search violated the Fourth Amendment. His argument is without merit. The warrant meets the probable cause requirement, and its execution is valid under the Leon good faith exception.

### A.  Standard of Review

"In this Circuit, appellate review of a suppression motion is bifurcated." United States v. Charles, 213 F.3d 10, 18 (1st Cir. 2000). We review de novo the legal conclusions of the

district court, "including the determination that a given set of facts constituted probable cause." Id. at 18 (quoting United States v. Khounsavanh, 113 F.3d 279, 282 (1st Cir. 1997)). We also review the applicability of the Leon good faith exception de novo. See United States v. Brunette, 256 F.3d 14, 17 (1st Cir. 2001). By contrast, we review the district court's findings of fact for clear error. Charles, 213 F.3d at 18. "A clear error exists only if, after considering all of the evidence, we are left with a definite and firm conviction that a mistake has been made." Id. (quoting United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996)). "[W]e will uphold a district court's decision to deny a suppression motion provided that any reasonable view of the evidence supports the decision." Id. 213 F.3d at 18 (quoting McCarthy, 77 F.3d at 529).

### B. **Probable Cause**

The Fourth Amendment's warrant requirement is meant to protect people from unreasonable intrusion by the government into their homes. The Warrant Clause guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Any search intruding upon [an individual's] privacy interest must be justified by probable cause and must satisfy the particularity requirement, which limits the scope and intensity of the search."

United States v. Bonner, 808 F.2d 864, 867 (1st Cir. 1986) (citing United States v. Heldt, 688 F.2d 1238, 1256 (D.C. Cir. 1981)). "When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity." United States v. Ferreras, 192 F.3d 5, 10 (1st Cir. 1999). The issuance of a warrant must satisfy two requirements for constitutionality under the Fourth Amendment. "A warrant application must demonstrate probable cause to believe that (1) a crime has been committed--the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched--the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (citing United States v. Zayas-Díaz, 95 F.3d 105, 111 (1st Cir. 1996)). Woodbury does not challenge the commission element, so we need not address it here.

Woodbury asserts that the warrant was not supported by probable cause because there was no evidence of a nexus between his alleged criminal activities and 7 Leisure Lane. Specifically, Woodbury contends that the officers had no personal knowledge that he lived at 7 Leisure Lane, and he points to the discrepancy in the affidavit over a reference to Lamb Street. He claims that because there was not "a fair probability that contraband or evidence of a crime [would] be found in a particular place," namely, his

-8-

apartment, there was no probable cause to support the warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Woodbury argues that MacVane's determination that Woodbury resided at 7 Leisure Lane was the only link, and that the resulting issuance of a warrant was a "mere ratification of the bare conclusions of others." Id. at 239. Woodbury maintains that conclusory statements in MacVane's affidavit could not constitute a "substantial basis" for the issuing judge's determination of probable cause. United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006) (interpreting Gates to require something more than a "bare bones" recitation of conclusory statements by the affiant for a substantial basis to exist).

The Government argues that the link between Woodbury's drug trafficking and his place of residence could reasonably have been inferred from the facts. We agree. See United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007) ("Common sense dictates that evidence of [defendant's] possession could probably be found in the location where he sold drugs two days before."); Feliz, 182 F.3d at 88. The warrant clearly identified Woodbury to be the occupant of the searched premises and also provided a physical description of him. While MacVane's affidavit in support of the warrant did mention that Woodbury's activities occurred at Lamb Street, the affidavit and application for the warrant clearly indicate that the warrant was specifically being sought for

Woodbury's apartment, which the police determined to be on Leisure Lane.[3]  The Government informants' mistake as to the actual street name is not enough to invalidate the warrant.  See United States v. Cruz, 594 F.2d 268, 273-73 (1st Cir. 1979) (holding warrant valid where mistake of key fact was understandable and unintentional misstatement and not necessary to finding of probable cause since affidavit on its face established probable cause for search of defendant's residence).

The application for the warrant clearly indicates that according to the informants' statements, at least part of the criminal activity occurred at "his (WOODBURY'S) apartment."  The police were provided two first-hand accounts of criminal activity at Woodbury's apartment by law enforcement informants.  One of the informants had just left the apartment the night the officers sought the warrant, and told police that he had been a frequent visitor there and personally observed Woodbury receiving drugs.  This same informant also told police that Woodbury showed him a .40 caliber handgun and that Woodbury usually kept it in his closet.  See United States v. Capozzi, 347 F.3d 327, 333-34 (1st Cir. 2003) (finding police had probable cause where warrant sought was based on tip from informant and corroborated with first-hand knowledge of weapons used in a crime).

---

[3]  Leisure Lane is the name of a driveway off of Lamb Street.

We "examine [an] affidavit in a practical, commonsense fashion," Feliz, 182 F.3d at 86, and give "considerable deference" to the issuing magistrate's conclusion that probable cause has been established, id. (quoting Zayas-Díaz, 95 F.3d at 111). The relevant inquiry is "whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of crime will be found." Feliz, 182 F.3d at 87 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). We do not require "that the belief be shown to be necessarily correct or more likely true than false." Id. We find that the facts MacVane presented in his affidavit and application demonstrate that he reasonably believed the evidence of a crime would be found at Woodbury's apartment.

In Feliz we urged a weighing of the factors in determining probable cause while reiterating that such weighing "may result in the inference of probable cause to believe that criminal objects are located in a particular place, such as a suspect's residence, to which they have not been tied by direct evidence." Id. at 88. Even without direct evidence, "common sense, buttressed by affiant's opinion as a law enforcement officer," might permit the inference "that [the defendant] would be likely to keep [evidence] relating to drug transactions at his apartment." Id. Here, the informants actually recounted criminal activity at Woodbury's place of residence. In light of these facts and "the experience and training of the affiant," United States v.

-11-

<u>Jordan</u>, 999 F.2d 11, 14 (1st Cir. 1993), a sufficient basis existed to find probable cause for the warrant.

### C.  **The Leon Good Faith Exception**

Woodbury contends that the warrant fails the Fourth Amendment's particularity requirement as it is particularized only with respect to the Lamb Street apartment.  The Government admits, and it is plain from the face of the warrant, that the wrong unit was specified on the warrant.  We need not address Woodbury's particularity arguments because we find that the <u>Leon</u> good faith exception applies.  "The usual remedy for seizures made with [a defective warrant is suppression] in order to deter future violations of the Fourth Amendment."  <u>Brunette</u>, 256 F.3d at 19 (citing <u>Weeks</u> v. <u>United States</u>, 232 U.S. 383, 391-93, (1914)).  Suppression, however, is not always necessary.  "This exclusionary rule does not obtain . . . where an objectively reasonable law enforcement officer relied in good faith on a defective warrant because suppression in that instance would serve no deterrent purpose."  <u>Id.</u> (citing <u>Leon</u>, 468 U.S. at 920-21).

Woodbury argues that the <u>Leon</u> good faith exception to suppression cannot apply because (1) the officers acted outside the scope of the warrant, <u>United States</u> v. <u>Fuccillo</u>, 808 F.2d 173, 177 (1st Cir. 1987), and (2) the warrant was "so lacking in indicia of probable cause," <u>Leon</u>, 468 U.S. at 923 (quoting <u>Brown</u> v. <u>Illinois</u>, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part))

-12-

(internal quotation marks omitted), that "no reasonably well trained officer should rely on" it, id. Woodbury overstates the alleged problem with the warrant. The warrant was not "so facially deficient" that the officers could not have presumed it valid. Id. The police officers mistook which apartment within the multi-unit dwelling belonged to Woodbury, but it was reasonable for them to believe that the warrant was valid. See Bonner, 808 F.2d at 868 (upholding scope of warrant and validating search where warrant "did not leave so much to the discretion of the officers executing the warrant").

Under Leon, the good faith exception applies when government agents rely on a warrant in objective good faith and in the interest of justice suppression is generally inappropriate. See Brunette, 256 F.3d at 19. We find that to be the case here. Although the good faith exception applies in some cases, it is inapplicable in certain circumstances. The Leon good faith exception does not apply where an officer's good faith reliance on a warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or a warrant that is "'so facially deficient--i.e. in failing to particularize the place to be searched or the things to be seized-- that the executing officers cannot reasonably presume it to be valid.'" United States v. Owens, 167 F.3d 739, 745 (1st Cir. 1999) (quoting Leon, 486 U.S. at 923). The facts here and the analysis

above, however, demonstrate that the warrant was issued with probable cause. The police also reasonably presumed the warrant to be valid.

"The good fath exception 'assumes . . . that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant.'" Fuccillo, 808 F.2d at 178 (quoting Leon, 468 U.S. at 918 n.19). The police officers acted within the scope of the warrant in searching Woodbury's apartment. The warrant specifies that it is for Woodbury's apartment. Though the warrant listed what MacVane "believed to be" the bottom-floor left apartment, with reasonable effort and without mistakenly searching the wrong apartment, the police were able to execute the warrant against their intended target. After knocking on the door to the bottom-floor left apartment, the police were told by the occupant that Woodbury did not live there but lived in the second-floor left apartment. The police immediately proceeded upstairs and executed the warrant there. By refraining from searching the wrong apartment, the officers made clear their good faith in the warrant's limitations and their understanding that it was restricted to the search of Woodbury's apartment. See Bonner, 808 F.2d at 866.

We cannot say that the search warrant for Woodbury's apartment was so facially deficient that it failed the standard

outlined in Leon and as applied by this Court.  See Owens, 167 F.3d at 745; United States v. Díaz, 841 F.2d 1, 5-6 (1st Cir. 1988). Though listing the wrong unit, the warrant made clear reference to the apartment occupied by Woodbury.  Woodbury's claims of facial deficiency do not rise to the level that we have found in other cases.  See United States v. Ricciardelli, 998 F.2d 8, 16 (1st Cir. 1993) (invalidating a warrant that "contained non-technical defects readily observable to experienced postal inspectors and . . . that the inspectors' omissions in the warrant-application process constituted a second, independently sufficient ground for distinguishing this case from Leon").

In Fuccillo, officers seized the contents of an entire warehouse instead of the cartons of women's clothing specified on the warrant.  Fuccillo, 808 F.2d at 177-78.  The facts in Fuccillo precluded any assumption that the officers "'searched only those places and for those objects that it was reasonable to believe were covered by the warrant,'" and we thus declined to apply the Leon good faith exception.  Id. at 178 (quoting Leon, 468 U.S. at 918 n.19).  We also said in Fuccillo that where "the agents were reckless in not including in the affidavit information which was known or easily accessible to them," we would decline to apply the Leon good faith exception.  Id.  There, the agents failed to "[take] every step that could reasonably be expected of them" by neglecting to make any effort to obtain information that would have

-15-

identified the criminally related goods and distinguished them from the rest of the goods in the warehouse. Id. (quoting Massachusetts v. Sheppard, 468 U.S. 981, 989 (1984)). In the absence of any direction for identification of the stolen cartons, the warrant was "facially deficient" and could not have been presumed valid by the executing officers. Id. at 178 (quoting Leon, 468 U.S. at 923). In seizing the contents of the entire warehouse anyway, the executing officers acted recklessly such that we found application of the Leon good faith exception to be improper. Id.

The facts of the present case do not rise to the same level of defectiveness. The warrant was not so facially deficient that the executing officers could not reasonably have presumed it to be valid. The Leon good faith exception applies, and the warrant was therefore legally executed.

### III. Conclusion

For the reasons explained above, we affirm the judgment of the district court denying Woodbury's motion to suppress.

**Affirmed**.

(Concurrence opinion follows)

-16-

**BOUDIN**, **Chief Judge**, **concurring**.  The panel opinion convincingly resolves the Fourth Amendment challenge by invoking the Leon doctrine: it shows that the police acted in good faith even if it were assumed that the warrant itself was in some measure defective.  It may still be useful to say something about the alleged defect because  searches in multi-apartment buildings are common and the problem of the uncertain apartment number recurs.

In this case there were two different glitches.  The first was whether the building containing Woodbury's apartment was at 7 Leisure Lane or at Lamb Street.  However, this initial uncertainty was not in any way a defect in the warrant, which correctly specified that the building was at 7 Leisure Lane.  And, despite the informant's reference to Lamb Street (from which Leisure Lane is a kind of driveway), there was ample probable cause for a warrant specifying the Leisure Lane address as the location of well verified likely drug dealing by Woodbury.

The warrant thus said clearly that it was for a search of Woodbury's apartment at 7 Leisure Lane--indeed, specifying the building as "a white multi-unit dwelling with a covered front porch, and a grey shingled roof"; the arguable defect came in the further statement that Woodbury's own unit was "believed to be the bottom floor left apartment."  This was an accurate statement of the officer's belief when the application and affidavit were

-17-

submitted; but, arriving at the building, the agents learned from a neighbor that Woodbury's apartment was on the second floor.

Under the case law, the Woodbury warrant would be valid and sufficient even if it had not said anything about the location of Woodbury's apartment within the building. "[A] warrant has been considered valid if it specifies the name of the occupant of the apartment against which it is directed, despite the absence of any physical description of the particular apartment." United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975).[4] That the warrant added that the apartment was "probably" in a specific location ought not make it "defective" so as to imply its legal invalidity.

The supposition was correctly stated as merely "probable" and so it is hardly surprising that the agents made further inquiry on arriving at the building. In such cases, as where no apartment number is specified at all, the correct apartment can often be verified from letter boxes or building directories in the lobby; in this case, the information was secured from a neighbor. No attempt was made to enter the apartment until its correct location in the building had been ascertained.

---

[4] Accord United States v. Vaughan, 875 F. Supp. 36, 42 (D. Mass. 1995) ("The particularity requirement with respect to multiunit buildings 'may be satisfied by giving the address of the building . . . and naming the person whose apartment is to be searched . . . .'") (quoting United States v. Hinton, 219 F.2d 324, 326 (7th Cir. 1955)); 2 Wayne R. LaFave, Search and Seizure § 4.5(b) & n.60 (4th ed. 2004).

This is thus not a case where a warrant inaccurately authorized a search of a specific apartment: the search authorized was of Woodbury's apartment in a specific building. It made sense to add further information about its probable location just as it made sense to describe the structure as a white frame building. But no one would describe the warrant as legally "defective" if the warrant had said that the building was at 7 Leisure Lane, adding incorrectly that the building was "probably" gray.

So while Leon is "belt and suspenders," the premise that there was any defect casting doubt on the validity of the warrant is merely an arguendo assumption. Leon might well have been essential if the warrant had definitively misstated the location of the place to be searched. See United States v. Lora-Solano, 330 F.3d 1288, 1294-95 (10th Cir. 2003); cf. United States v. Clement, 747 F.2d 460, 461 (8th Cir. 1984). In this case, it is merely the easiest path to affirmance.