*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0021P (6th Cir.)
File Name: 03a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee/*
      *Cross-Appellant,*

      *v.*

LONNIE D. CARPENTER
(01-5368) and SHEILA J.
CARPENTER (01-5370),
      *Defendants-Appellants/*
      *Cross-Appellees.*

Nos. 01-5368/
5370/5446

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 99-00045—Thomas G. Hull, District Judge.

Argued and Submitted: October 29, 2002

Decided and Filed: January 16, 2003

Before: SILER and MOORE, Circuit Judges; McKINLEY,
District Judge.*

――――――――――――――――

*The Honorable Joseph H. McKinley, Jr., United States District
Judge for the Western District of Kentucky, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, Greeneville, Tennessee, for Appellants. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, Greeneville, Tennessee, for Appellants. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee. Lonnie D. Carpenter, Edgefield, South Carolina, pro se.

McKINLEY, D. J., delivered the opinion of the court, in which SILER, J., joined. MOORE, J. (pp. 18-19), delivered a separate dissenting opinion.

---

**OPINION**

---

JOSEPH H. McKINLEY, JR., District Judge. Defendants Lonnie and Sheila Carpenter ("Defendants") appeal their convictions for manufacture of marijuana, in violation of 21 U.S.C. § 841(a)(1), arguing that (1) the district court improperly denied their motions to suppress; (2) there was insufficient evidence to support their convictions; and (3) the district court violated Sheila Carpenter's Sixth Amendment right to confront witnesses against her. The Government, in turn, appeals the district court's forfeiture order, arguing that the district court erred in ordering only a partial forfeiture of the Defendants' property. For the reasons set forth below, we **AFFIRM** in part, **VACATE** in part, and **REMAND**.

cause. The majority borrows a rule from the Eighth Circuit's decision in *United States v. Johnson*, 78 F.3d 1258 (8th Cir. 1996), according to which courts should consider information known to the officers but "not presented to the issuing judge," *id.* at 1263. This rule undermines the very purpose of the warrant requirement, as it enables law enforcement officials to bypass the judiciary altogether. Moreover, the majority's reliance on the Supreme Court's consideration in *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), of "the information possessed by the searching officials" is unconvincing. Such an inquiry makes far more sense in *Anderson*'s context of qualified immunity and a warrantless search, *id.* at 640-41, which depend in large part on the individual officer's actions and liability, than in the present context of a search based on a warrant, for which there is a constitutional requirement that police make their case to a judge before intruding on a citizen's privacy. I am not at all convinced that the police officers' knowledge of additional facts that they could have presented to the court demonstrates a good faith reliance on the warrant. To my mind, their additional knowledge shows their awareness of the warrant's deficiencies. For these reasons, I respectfully dissent.

———————

**DISSENT**

———————

KAREN NELSON MOORE, Circuit Judge, dissenting. I agree with the majority that the Government's evidence was sufficient to support the conviction, that trial procedures did not violate Sheila Carpenter's Sixth Amendment right to confront the witnesses against her, and that the Government is entitled to the forfeiture it seeks. I also agree with the majority that Captain Lawson's affidavit did not provide probable cause for a search warrant. However, because I would go further and hold that the officers were not entitled to a "good faith" exception based on *United States v. Leon*, 468 U.S. 897 (1984), I respectfully dissent. Specifically, I would hold that Captain Lawson's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quotation omitted).

The majority here suggests that although the evidence linking the marijuana plants to the defendants' residence was weak, it was not so weak that a reasonably trained officer would doubt that it constituted probable cause. The evidence supporting the search warrant consisted of two lone facts: marijuana plants were growing "near" the residence, and there was a road between the residence and the marijuana plants. This description, however, is utterly lacking in the particularized information necessary to support a finding of probable cause. Indeed, it could justify a search of every house in a neighborhood if one neighbor were found with contraband in his or her garden. This is hardly the compelling nexus that the Fourth Amendment requires.

I also do not believe that the officers' reliance on an invalid search warrant can be saved by the fact that the officers knew other information — not included in the affidavit supporting the warrant — that, in their opinion, would justify probable

## I.  *BACKGROUND*

### A.  Facts

On June 23, 1999, Lieutenant Robert Crumley, a helicopter pilot for the Hawkins County Tennessee Sheriff's Department, spotted patches of marijuana while conducting aerial surveillance in Hawkins County. Although unable to determine upon whose property the marijuana was growing, Lt. Crumley did observe a roadway and beaten paths leading from the back door of the residence to the marijuana patches roughly three-hundred yards away. He also observed Mr. Carpenter and his son walking away from the area where the marijuana was located toward the residence. This information was immediately relayed to officers on the ground.

Based on Lt. Crumley's observations, officers requested consent to search the residence. When the Defendants refused, a state search warrant was obtained based on the affidavit of Captain Ronnie Lawson. Upon searching the trailer, officers found significant quantities of packaged marijuana seeds, several small bags of marijuana, a large package of marijuana, rolling papers, and scales. The Defendants were placed under arrest and the contraband was seized as evidence.

### B.  Procedural History

On July 27, 1999, the Defendants were charged with manufacturing marijuana and using a minor to assist in the manufacture of marijuana. The indictment also sought forfeiture of the Defendants' real property consisting of 100 acres, pursuant to 21 U.S.C. § 853, as property used to commit or facilitate the manufacture of marijuana. Both Defendants filed motions to suppress, which were ultimately denied.

Defendants discharged their attorneys and proceeded to trial, *pro se*, where they were acquitted of the "using a minor" charge and the jury was unable to reach a verdict on the

manufacturing marijuana charge. On retrial, the Defendants, again proceeding *pro se*, were convicted of manufacturing marijuana. In addition, the jury found that the Defendants' property was "used to commit or to facilitate the commission of drug violations," thereby subjecting it to statutory forfeiture. J.A. 216-17.

On March 7, 2001, the district judge issued an order limiting the forfeiture of the Defendants' property to just six acres instead of the entire 100 acres. Specifically, the order directed the Government to "file a legal description in metes and bounds which would incorporate the one acre and the mobile home as well as an additional 5 acres for a total of 6 acres." J.A. 306. The order further stated that "[f]ailure to file this legal description will result in denial of the forfeiture." *Id.*

## II.  *DISCUSSION*

### A.  Motion to Suppress

Defendants first argue that the district court erred in denying their motions to suppress on the basis that Captain Lawson's affidavit was insufficient to establish probable cause.

### 1.  Standard of Review

When reviewing motions to suppress, factual findings of the district court will be upheld unless clearly erroneous, while legal decisions are reviewed *de novo*. *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996) (citing *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir. 1993)).

In determining the existence of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213,

forfeiture of the entire property would not be disproportionate to this amount. Even under the applicable Guidelines range, however, forfeiture of the Defendants' entire farm is not excessive. Lonnie and Sheila Carpenter each faced a guidelines fine range of $6,000 to $60,000, for a combined Guidelines range of $12,000 to $120,000. U.S.S.G. § 5E1.2(c)(3).

Based upon the foregoing, the Court finds that forfeiture of the entire property is not grossly disproportional to the gravity of the offense so as to violate the Excessive Fines Clause. Thus, the district court's decision to order only a partial forfeiture was error.

## III.  *CONCLUSION*

For the forgoing reasons, we **AFFIRM** the Defendants' convictions and the district court's denial of the motions to suppress, **VACATE** the forfeiture order, and **REMAND** for forfeiture in accordance with this opinion.

*Bajakajian*, 524 U.S. at 339 n. 14. While the Court noted that authorized penalties are relevant, they are but one of several factors to consider in assessing the overall gravity of the offense.

In *Bajakajian*, for instance, where the defendant was charged with failure to report exported currency, the Supreme Court considered the following factors relevant to the gravity of the offense: (1) that the defendant's crime was solely a reporting offense; (2) that the violation was unrelated to any other illegal activities; (3) that the currency was the proceeds of legal activity and was to be used to pay a lawful debt; and (4) that the defendant did not fit into the class of persons for whom the statute was principally designed to cover, such as money launderers, drug traffickers or tax evaders, and (5) that the maximum fine under the Sentencing Guidelines was relatively small. While these factors were clearly fact-specific to the case before the Court, they are instructive as to the type of analysis that must be undertaken in assessing the gravity of the offense.

In the case at hand, the Defendants were systematically cultivating marijuana for the purpose of distribution. While the plants growing on the Defendants' property might have been "extremely small" when confiscated, the intention of the Defendants was clearly to cultivate, harvest, and process those plants at a substantial profit. Moreover, in addition to the "packaged" marijuana found in the trailer, police also discovered substantial quantities of marijuana seeds. Had the Defendants remained unfettered in their illegal enterprise, one can only speculate as to the eventual "street value" of the final product. There is nothing insignificant about the Defendants' crime. In fact, it is quite serious considering the well-documented negative effects of drug manufacture and distribution.

With regard to the authorized penalties, as noted by the Government, the Legislature has authorized fines of up to $250,000 for the crime of manufacturing marijuana. Clearly,

238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). For a magistrate to properly perform this function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists. *United States v. Weaver*, 99 F.3d 1372, 1377 ( 6th Cir. 1996). A magistrate's findings are entitled to great deference, and "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238. Yet, "the court must . . . insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for police." *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As such, "[d]eference to the [issuing] magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## 2. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation, . . . ." U.S. CONST. amend. IV. The "probable cause" standard is aptly summarized in *United States v. King*, 227 F.3d 732 (6th Cir. 2000):

Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. This determination does not lend itself to the application of rigid legal rules. Rather, the probable cause standard is a practical non-technical conception wherein we deal with probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Stated otherwise, probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.

*Id.* at 739 (citations omitted).

### 3.   Sufficiency of the Affidavit

Applying the above standard, it does not appear that Captain Lawson's affidavit provided a substantial basis for the magistrate to conclude that a search of the Defendants' residence would uncover evidence of wrongdoing. The relevant portion of the affidavit stated as follows:

> On June 23, 1999 at approximately 12:30 PM Helicopter Pilot Lt. Bob Crumley was conducting an aerial search of Hawkins Co.. When he was flying over the above described property he saw numerous Marijuana Plants growing near the residence.
>
> Upon information I received from Lt. Crumley, there is a road connecting the above described residence to the Marijuana Plants. Having personal knowledge that Lt. Crumley is certified in the identification of Marijuana I feel there is probable cause to search the said residence and property and seize any illegal contraband found.

J.A. 46.

Although the affidavit states Captain Lawson's belief that contraband would be found in the residence, it fails to set forth the facts supporting that belief. There was no mention of the beaten paths leading to the backdoor of the residence. There was no reference to any Defendant being near the marijuana. There was no reference to any knowledge that the residence had been used in any manner to facilitate the manufacture of marijuana or that any drugs or drug paraphernalia had been seen in or around the residence.

In *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), police uncovered strong circumstantial evidence that the defendant was a drug supplier. The investigating officer then obtained a warrant to search the defendant's safe deposit box by submitting an affidavit stating that "[b]ased on [the

and there was no evidence that these plants could have been sold." J.A. 305. Based on these observations, the district court concluded that "forfeiture of the Carpenter's property, which is valued at $82,500.00, is therefore not proportionate to the 'street value' or market value of the marijuana found on their property." *Id.*

In addition to its "street value" analysis, the district court also found that complete forfeiture of the farm, valued at $82,500, would have been grossly disproportionate to the Sentencing Guidelines range fine of $6,000 to $60,000 for each Defendant.[3] The Government disputes the district court's reliance on the Guidelines range fine, arguing that forfeiture of the Defendants' entire farm would not be excessive because the value of the farm does not exceed the maximum fine of $250,000 allowed by statute. *See United States v. Hill*, 167 F.3d 1055, 1072-73 (6th Cir. 1999) (noting that there is no constitutional violation where forfeiture does not exceed the maximum fine allowed by statute). In *Bajakajian*, however, the Supreme Court rejected such an oversimplified approach:

> In considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence. Here, as the Government and dissent stress, Congress authorized a maximum fine of $250,000 plus five years' imprisonment for willfully violating the statutory reporting requirement, and this suggests that it did not view the reporting offense as a trivial one. That the maximum fine and Guideline sentence to which respondent was subject were but a fraction of the penalties authorized, however, undercuts any argument based solely on the statute, because they show that respondent's culpability relative to other potential violators . . . is small indeed.

---

[3] This Court gives deference to the district court's factual finding that the value of the 100 acres is $82,500.

forfeiture was if such forfeiture would have violated the Excessive Fines Clause of the Eighth Amendment.

### 2.  Excessive Fines Clause

The district court concluded that forfeiture of the Defendants' entire 100 acre farm would have violated the Excessive Fines Clause.  A punitive forfeiture violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of a defendant's offense."  *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).[2]  "In applying this standard, the district courts in the first instance, and the courts of appeals, reviewing the proportionality determination *de novo*, must compare the amount of the forfeiture to the gravity of the defendant's offense."  *Id.* at 336-37.

Although the district court properly referenced the "grossly disproportional" test set forth in *Bajakajian*, it misapplied the test.  Rather than comparing the amount of the forfeiture to the *gravity of the offense*, it instead compared the amount of the forfeiture only "with the *value of the property involved in the offense*."  J.A. 304  (emphasis added).

For example, the district court emphasized that the "street value" of the marijuana confiscated from the Defendants' trailer was between $2,600 and $3,900.  The district court further noted the Government's lack of evidence as to the "street value" of the plants found growing on the property, commenting that "many of the plants were extremely small

---

[2] The district court erroneously employed elements of both a "proportionality" and "instrumentality" test in its excessive fines analysis. *See* J.A. 301.  Although the instrumentality test remains relevant in civil *in rem* proceedings against "guilty property," it has no application where the nature of the forfeiture is punitive.  Rather, the Supreme Court has made it clear that where, as here, the Government proceeds against a defendant *in personam*, "the test for analyzing the excessiveness of a punitive forfeiture involves *solely a proportionality determination*." *Bajakajian*, 524 U.S. at 333-34 (emphasis added).

officer's] training and experience, [the officer] believes . . . that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes." *Id.* at 1097.  After noting the "lack of evidentiary nexus . . . between the safe deposit boxes and any criminal activity," this Court held that the officer "did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the [safe deposit box] warrant should not have been issued." *Id.* at 1097-98.  Thus, for an affidavit to support a finding of probable cause, there must be a "sufficient nexus" between the place to be searched and the evidence sought.  *United States v. Savoca*, 761 F.2d 292, 297-98 (6th Cir. 1985); *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).

Here, the affidavit simply fails to provide the required nexus between the residence and the illegal activity.  Of course, had the affidavit properly referred to the beaten path leading from the back door of the residence to the marijuana patches, a much stronger nexus between the two would have been established.  As it stands, however, the fact that the marijuana was "near" the residence and that there was a "road" connecting the residence to the marijuana plants gives rise to a mere suspicion, not probable cause.

### 4.  Good Faith Exception

It is well-established that the Fourth Amendment exclusionary rule does not apply in cases where law enforcement officers reasonably rely in good faith upon a search warrant, even if the warrant is ultimately found to be invalid.  *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  The "good faith" exception is not boundless, however, and the Supreme Court has identified four specific situations where it is inappropriate: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate failed to act in a neutral and detached

fashion and merely served as a rubber stamp for the police; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; or (4) where the warrant was facially deficient in that it failed to particularize the place to be searched or the things to be seized. *Id.* at 914-15, 923.

After a *Franks* hearing[1], the district court concluded that the affidavit was reasonably accurate and further concluded that, even assuming the affidavit contained inaccurate statements, there was no evidence that such statements were made knowingly and intentionally, or with reckless disregard for the truth. We agree.

Nothing in the record indicates that the issuing magistrate failed to act in a neutral and detached fashion, that he merely served as a rubber stamp for police, or that the warrant application was supported by a "bare bones" affidavit. The affidavit stated that marijuana was growing near the Defendant's trailer, and that a road connected the trailer to the marijuana. Although the nexus between the evidence sought and the Defendants' residence was insufficient to establish probable cause, that link was not "so remote as to trip on the 'so lacking [in indicia of probable cause as to render official belief in its existence entirely unreasonable]' hurdle." *Schultz*, 14 F.3d at 1098. Finally, the warrant adequately particularized the place to be searched and the items to be seized, as it provided for a search of the house, buildings and

---

[1] Where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with the reckless disregard for the truth, was included by the affiant in the search warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

### D.   Forfeiture Order

#### 1.   21 U.S.C. § 853

The Government contends that the district court erred in ordering only a partial forfeiture of the Defendants' property on the basis that forfeiture of the entire property was mandatory. We agree.

The applicable forfeiture statute, 21 U.S.C. § 853, provides, in pertinent part:

> Any person convicted of [marijuana manufacture] shall forfeit to the United States, . . .
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . .

21 U.S.C. § 853.

The statute employs the word "shall," thereby "requir[ing] forfeiture of *all* of the 'property' that a defendant uses or intends to use to commit or facilitate the commission of an offense, even if the defendant uses only *part* of that 'property' for that purpose." *United States v. Smith*, 966 F.2d 1045, 1053 (6th Cir. 1992). In determining what constitutes "property," this Court has held that "tracts of real property subject to forfeiture under section 853 are defined by the instruments and documents that created the defendant's interest in the property." *Id.* at 1054.

Here, the jury found that the property described in Count 1 of the indictment (the Defendants' 100 acre farm) was "used to commit or to facilitate the commission of" Defendants' drug violations. J.A. 216-17. Because the Defendants' interest in the 100 acres was acquired through one transaction by a single deed, the entire 100 acres was "property" subject to mandatory forfeiture. Accordingly, the only proper basis upon which the district court could have denied complete

*Mr. Carpenter*: Okay, sir.

*The Court*: Since you didn't know the rule until now, you can ask him. If you got a question too you want to ask him, ask him.

*Mrs. Carpenter*: I just want to ask him a couple of questions about his pictures; that's all I've got.

*The Court*: All right.

Sheila Carpenter then proceeded to cross-examine Gerald Gibson. Cross-examination of Greg Larkin was conducted solely by Sheila Carpenter. After Lonnie Carpenter finished his cross-examination of Gary Murrell, the following dialogue took place between the district court and Sheila Carpenter:

*The Court*: Okay, Ms. Carpenter, do you want to ask him anything?

*Mrs. Carpenter*: I'm sorry, I wasn't expecting -- you said only one could cross-examine.

*The Court*: Well, I've changed my mind. I was in error, many times in error, but never in doubt; but you want to ask him any questions?

*Mrs. Carpenter*: Well, yeah, I think I will.

She then proceeded to cross-examine Gary Murrell. Although the district court erred in stating that only one defendant could cross-examine each witness, the above cited portions of the transcript demonstrate that the district court's error was harmless: Sheila Carpenter was able to cross-examine all three witnesses. Thus, her right to confront witnesses against her was not denied.

vehicles on the premises, and seizure of any drugs or marijuana paraphernalia.

"When assessing the objective reasonableness of officers executing a warrant, we must look to the totality of the circumstances, including information that was not presented to the issuing judge." *United States v. Johnson*, 78 F.3d 1258, 1263 (8th Cir. 1996); *see also Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987) (explaining that "whether it was objectively legally reasonable to conclude that a given search was supported by probable cause . . . will often require examination of the information possessed by the searching officials."); *Leon*, 468 U.S. at 922 n. 23 (in assessing good-faith inquiry, all of the circumstances may be considered). Without question, the officers knew additional facts which would have been sufficient to establish probable cause had they been included in the affidavit. Captain Lawson's only mistake was in failing to articulate in the affidavit the details which were known. Although we find the affidavit insufficient, we conclude that the officers reasonably relied upon the search warrant when issued. Thus, the *Leon* "good faith" exception applies here and the Defendants' motions to suppress were properly denied.

### 5. Scope of the Warrant

The district court found that seizure of a portrait, camera, and arrowhead collection from the residence was improper, as it exceeded the scope of the warrant, which only authorized a search for drugs and marijuana paraphernalia. Defendants argue that seizure of these items effectively invalidated the entire search.

In support of their argument, Defendants cite *United States v. Medlin*, 842 F.2d 1194 (10th Cir. 1988): "When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general

warrant thereby requiring suppression of all evidence seized under that warrant." *Id.* at 1199.

It cannot be said that the officers here grossly exceeded the scope of the warrant.  In *Medlin*, for example, the officers improperly seized some 667 items of property.  Here, on the other hand, only a few items were wrongfully seized.  Therefore, while seizure of the portrait, camera, and arrowhead collection was improper, it was not such a flagrant violation as to require suppression of all evidence otherwise properly seized.

### B.  Insufficient Evidence

The Defendants maintain that there was insufficient evidence to support their convictions.  Their convictions must be upheld, however, if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Defendants allege the following proof failures: (1) the Government introduced no proof to show that Sheila Carpenter had ever been near the marijuana patches; (2) the Government introduced no evidence of any items that Lonnie Carpenter could have used to water the marijuana patches; (3) the Government did not prove that the Defendants knew that marijuana was growing on their property; (4) the Government failed to prove that the marijuana was growing on Defendants' land; and (5) even if the Government could show that Defendants were users of marijuana, they could not show that Defendants were guilty of marijuana manufacture.

Upon review of the record, it appears that the Government presented ample evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Specifically, the jury heard evidence that (1) officers found 134 marijuana plants growing at nine various locations on or near the Defendants' property;

(2) some of the marijuana plants had been freshly watered; (3) trees had been cut to camouflage some of the marijuana plants, and a chainsaw was located in the Defendants' bedroom; (4) extensive evidence of marijuana manufacture was located in the house, including baggies and seeds; and (5) users typically discard marijuana seeds, while growers save seeds.  This evidence was sufficient to find the Defendants guilty of marijuana manufacture.

### C.  Confrontation Clause

Defendant Sheila Carpenter asserts that the district court denied her adequate opportunity to cross-examine Gerald Gibson, Craig Larkin, and Gary Murrell, the Government's second, third, and fourth witnesses, respectively.  Although Confrontation Clause arguments not presented to the district court typically will not be heard on appeal, "this general rule is one of prudence rather than a limitation on this court's jurisdiction." *U.S. v. Hayes,* 218 F.3d 615, 621 (6th Cir. 2000).  As Sheila Carpenter did not properly raise a Confrontation Clause objection at trial, the appropriate standard of review is the "plain error" standard of Rule 52(b). *Id.* at 622.  Under that standard, reversal is only warranted where "substantial rights" are affected, meaning that the asserted error "must have affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

After Lonnie Carpenter finished his cross-examination of Gerald Gibson, the following dialogue took place between the district court and Sheila Carpenter:

*Mrs. Carpenter*:  I have some questions later, if you were wanting –

*The Court*:  You got another six minutes, you can go to it if you want to.  I'm only going to have one of you cross-examine the witness, and both of you are not going to be able to cross-examine.