# United States Court of Appeals
## For the First Circuit

No. 08-1359

UNITED STATES OF AMERICA,

Appellee,

v.

RICHARD RODRIGUE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Boudin, John R. Gibson,[*] and Howard,
Circuit Judges.

Leonard I. Sharon and Sharon Leary & DeTroy, on brief for appellant.
Paula D. Silsby, United States Attorney and Margaret D. McGaughey, Appellate Chief on brief for appellee.

March 13, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  In this appeal from a criminal conviction following a jury trial, appellant Richard Rodrigue asserts that the district court erred in denying his motion to suppress evidence seized pursuant to a state search warrant.  His sole argument on appeal is that the affidavit submitted by law enforcement in support of the requested search warrant failed to establish probable cause.  For the reasons that follow, we affirm.

## I.  BACKGROUND

The relevant background facts, gleaned from the affidavit of Deputy Guy E. Dow of the Piscataquis County (Maine) Sheriff's Department (the "Sheriff's Department"), are undisputed.  On May 24, 2002, Agent Jon Richards of the Maine Drug Enforcement Agency notified the Sheriff's Department that he had seen a large rental truck on a back logging road.  The next day, Sheriff's Deputy George McCormick investigated the report and followed tire tracks to a large quantity of Pro-Mix brand potting soil deposited at the end of the dead-end road.  Two days later, Agent Richards informed Deputy McCormick of another large deposit of potting soil nearby, and two days after that, while surveying the area from an airplane, Deputy McCormick spotted a large marijuana cultivation site.  Also visible from the air was a red car parked at the end of a road near the site.  Later the same day, while surveying the logging road from the ground, Deputy McCormick observed a similar red car bearing a Maine license plate emerging from the area.  According to

-2-

the Maine Department of Motor Vehicles ("DMV") records, the license plate was listed to a white Chevrolet Caprice, and it had expired in 2001.

The following day, May 30, 2002, Deputy McCormick and a colleague returned to the logging road to photograph the potting soil, which had not been disturbed. They then proceeded to the cultivation site, where they observed a roughly 300 square-foot growing area with Pro-Mix potting soil distributed across it, and approximately 100 marijuana plants still in containers. Also present at the cultivation site was an unregistered white Polaris all-terrain vehicle ("ATV"). A path suitable for the ATV led from the cultivation site to the location on the logging road where the original deposit of potting soil had been discovered.

On June 1, 2002, Deputy McCormick located a maroon Subaru station wagon approximately five miles from the cultivation and deposit sites that bore the same Maine license plate number as the red car he spotted on the logging road three days earlier. Deputy Dow could see loose potting soil, which he identified as Pro-Mix, in the rear of the car. He also observed that both front tires of the car were flat.

Two days later, on June 3, 2002, Deputy McCormick and a colleague returned to the cultivation site and observed that the marijuana plants had not yet been transplanted from their containers, but that the ATV had been moved. The following day,

-3-

Deputy McCormick inspected the Subaru and saw that the license plate had been removed. He also observed a red gasoline can and two spare tires in the rear of the station wagon.

On June 6, 2002, Deputy McCormick and a colleague again visited the Subaru and the soil deposit site on the logging road. The Subaru's tires had been replaced and the license plate was still missing, and the amount of potting soil on the logging road was significantly reduced. As the officers left the deposit site, they passed a small black Volkswagen truck driving towards the deposit site bearing a license plate registered to Rodrigue. A short time later, the truck exited the area loaded with Pro-Mix potting soil; the officers attempted to follow the truck but soon lost it. They checked the cultivation site and observed that while the marijuana plants were still not transplanted, the ATV was no longer parked at the site.

The next day, Deputy McCormick and two of his colleagues decided to confiscate the marijuana plants. Upon arriving at the cultivation site, they observed that the marijuana had been removed from the containers and planted in the soil. They dug up and confiscated 85 plants and some of the Pro-Mix from the site. The lot numbers from this Pro-Mix matched the lot numbers from the Pro-Mix observed earlier at the deposit site.

That same day, a black Volkswagen truck and a white Polaris ATV were reported parked at a campsite at Knight's Landing

-4-

on Schoodic Lake.[1]  When Deputy Dow visited the campsite on June 10, 2002, he determined that the ATV parked behind the campsite was "very similar" to the one depicted in pictures from the cultivation site, and that the license plate on the black Volkswagen truck matched the license plate on the black Volkswagen truck that had been observed hauling Pro-Mix on the logging road.  With this information collected, Deputy Dow prepared an affidavit in support of an application for a warrant to search the campsite for, inter alia, marijuana, drug paraphernalia and the ATV.

The application was filed the next day, and a state district court judge concluded that probable cause existed and therefore issued the warrant.  The ensuing search at Knight's Landing resulted in the seizure of marijuana plants.  Rodrigue, who was asleep inside the camp at the time of the search, was subsequently charged with five criminal counts of violating federal drug laws.  After a jury trial, he was convicted of three of the charges, viz., conspiracy to possess with intent to manufacture and distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2 (Count I); manufacture and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 (Count II); and use of a firearm during and in relation to, or

---

[1]The campsite included a small, permanent housing structure, which was subject to the search in question.

possessing a firearm in furtherance of, the commission of the offenses outlined in Counts I and II, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[2]

Before trial, Rodrigue moved to suppress all evidence seized pursuant to the state search warrant, asserting that there was no probable cause to support the warrant, and also that the officers violated the "knock and announce" rule of the Fourth Amendment. The magistrate judge recommended denying the motion on both grounds. In determining whether there was a sufficient nexus between the marijuana growing operation and the camp to support the probable cause determination, the magistrate judge focused on the fact that the black Volkswagen truck and the white Polaris ATV were seen parked adjacent to the camp on two separate occasions Describing the case as a "close call," and citing United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002), for the proposition that "in a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause," the magistrate judge recommended that the district court defer to the state court's "common-sense" conclusion. The district court adopted the magistrate judge's factual findings and accepted without discussion

---

[2]Rodrigue was ultimately sentenced to sixty months incarceration on each of the first two counts, to be served concurrently, and sixty months for the third count, to be served consecutively, for a total of 120 months incarceration, followed by four years of supervised release. The other two counts from the original indictment were dismissed on the government's motion.

the conclusion that the warrant was supported by probable cause.[3] United States v. Sherman, 344 F. Supp. 2d 223, 227 n.3 (D. Me. 2004). Evidence of the seized marijuana plants was introduced at trial.

## II. LEGAL STANDARDS

"In reviewing the district court's denial of a defendant's motion to suppress, we review the district court's finding of fact for clear error and its legal determinations, including whether a particular set of facts constitutes probable cause, de novo." United States v. Dickerson, 514 F.3d 60, 65-66 (1st Cir. 2008) (citing United States v. Woodbury, 511 F.3d 93, 95 (1st Cir. 2007)).

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched - the so-called 'nexus' element." United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)) (internal quotation marks omitted). With regard to the "nexus" element,

---

[3]The district court rejected the magistrate judge's other recommendation, concluding that there had been a violation of the knock and announce rule that required suppression of the evidence seized. After an interlocutory appeal, we vacated the suppression order on the basis of the Supreme Court's decision in Hudson v. Michigan, 547 U.S. 586 (2006), which was decided during the pendency of the government's appeal. United States v. Sherman, No. 05-1458 (1st Cir. October 12, 2006) (unpublished order).

which is the only issue in dispute here, "a magistrate has to make 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 49 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Put differently, the application must give someone of 'reasonable caution' reason to believe that evidence of a crime will be found at the place to be searched." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality op.)). "The probable-cause nexus between enumerated evidence of the crime and the place 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].'" Id. (quoting United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979)).

### III.  ANALYSIS

Rodrigue's sole challenge on appeal is his assertion that Deputy Dow's affidavit did not establish a sufficient nexus between the marijuana plants and the campsite.  Specifically, he argues first that there was no direct evidence linking criminal activity to Rodrigue's residence, and second that the indirect evidence could not support the inference that evidence of marijuana cultivation would be found there.  We disagree.

-8-

The factual recitation in the affidavit is sufficient to establish the required nexus between the marijuana cultivation and the campsite. Two vehicles were observed at the areas associated with the illegal marijuana cultivation. One of the vehicles, the truck, was observed hauling the potting soil initially observed at the deposit site on the logging road and later spread on the cultivation site. The other vehicle, the ATV, was observed at the cultivation site on multiple occasions. On two later occasions, these vehicles were observed parked at the campsite. The identification of these vehicles was carefully done: the vehicles' makes and colors were matched using prior reports from Deputy McCormick and photographs taken at the cultivation site (each of which were attached to the warrant application), and the truck's license plate was matched to a prior report from Deputy McCormick, which also noted his having observed the truck hauling Pro-Mix away from the deposit site. Deputy Dow's affidavit also included his opinion, based on his training and experience in investigating marijuana cultivation schemes, that drug traffickers commonly kept evidence of drug trafficking in their vehicles, at the cultivation sites, or at their homes. The state court judge was entitled to give weight to the opinions of a trained investigator such as Dow. See Feliz, 182 F.3d at 87. Based on the totality of the circumstances, see Gates, 462 U.S. at 238, it was reasonable for the state court judge to conclude that the campsite was connected

to the illegal marijuana cultivation, and that there was a fair probability that evidence of that activity, including marijuana plants, would be found inside. This case is therefore not one of speculative inferences piled upon inferences, as Rodrigue would have us believe. Rather, this is a case where the affidavit recited facts establishing a clear and substantial connection between the illegal activity and the place searched; whatever inferences were required to find probable cause, they were reasonable.

Rodrigue's arguments to the contrary are unpersuasive. His argument that "the evidence fails to establish . . . that Rodrigue was engaged in criminal activity and that he lived at the Knight's Landing camp" is beside the point. The probable cause in this case did not depend on the connection between a person and the illegal marijuana cultivation (although clearly someone drove the vehicles and cultivated the marijuana), but rather on the connections between the cultivation and the campsite. All that was required was "a fair probability that contraband or evidence of a crime will be found in a particular place," Gates, 462 U.S. at 238; Rodrigue's relationship to the campsite was neither here nor there for purposes of establishing probable cause to search for marijuana. See Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1978) ("Under existing law, valid warrants may be issued to search any property . . . at which there is probable cause to believe that

-10-

fruits, instrumentalities, or evidence of a crime will be found."); id. at 556-57 n.6 (endorsing the view, expressed in Wayne R. LaFave, Search and Seizure: "The Course of True Law . . . Has Not . . . Run Smooth," 1966 U. Ill. L.F. 255, 260-61 (1966), that "a search warrant may be issued on a complaint which does not identify any particular person as the likely offender. . . . [I]t need not identify the person in charge of the premises or name the person in possession or any other person as the offender" (internal quotation mark omitted)); see also, e.g., Hunnewell v. United States, 923 F.2d 839, 1990 WL 254067, at *1 (1st Cir. 1990) (unpublished per curiam table decision) (same); United States v. McNally, 473 F.2d 924, 941 (3d Cir. 1973) ("[P]robable cause might well be established to suspect that illegal activity, evidence thereof or contraband, was at a given location without implicating any particular person.").

Similarly, the cases Rodrigue relies upon dealing with the search of a suspect's residence, such as United States v. Keene, 341 F.3d 78 (1st Cir. 2003), and Feliz, 182 F.3d 82, are all inapposite. Those cases deal with searches justified by a suspect's connection to a place, whereas the place searched in this case, the campsite, was itself connected to the marijuana cultivation by way of the vehicles.

Rodrigue's other arguments are no more compelling. The fact that the affidavit omitted the actual distance between the

deposit site and the cultivation site was not of consequence under the circumstances. The affidavit recited facts indicating that the sites were likely related to the same illegal cultivation operation, as bags of Pro-Mix with identical lot numbers were found at both the deposit and cultivation sites, and an ATV path connected the two. Whether the sites were near or far does nothing to undermine their clear relationship to each other, or to the vehicles observed at each location and then later at the campsite. Moreover, even if distance were somehow relevant, a judicial officer could reasonably have inferred from the affidavit that the sites were sufficiently close to each other. The affidavit described the officers' visits to both sites in a single day and observed that the sites were close enough to each other for an ATV to traverse the distance. The affidavit also incorporated a map of the area depicting all of the relevant cultivation and deposit sites. That map, although ambiguous as to precise distances, at least indicated that the deposit and cultivation sites were in the same general area.

Rodrigue's reliance on United States v. Carpenter, 317 F.3d 618 (6th Cir. 2003) is also inapposite. That case, like this one, involved a cultivation site observed from the air and clear connections between the cultivation site and the place searched -- in Carpenter, the connection was a path beaten from the site to the back door of the house eventually searched, and known occupants of

the house traversing the path. In ruling the affidavit insufficient to support a determination of probable cause, however, the Sixth Circuit focused not on the underlying facts, but on the summary nature of the affidavit:

> Although the affidavit states [the affiant's] belief that contraband would be found in the residence, it fails to set forth the facts supporting that belief. There was no mention of the beaten paths leading to the backdoor of the residence. There was no reference to any Defendant being near the marijuana. There was no reference to any knowledge that the residence had been used in any manner to facilitate the manufacture of marijuana or that any drugs or drug paraphernalia had been seen in or around the residence.

Id. at 622. And notably, the Sixth Circuit went on to suggest that, if referred to in the affidavit, the path itself would have been enough to create the necessary nexus: "Of course, had the affidavit properly referred to the beaten path leading from the back door of the residence to the marijuana patches, a much stronger nexus between the two would have been established." Id. at 623. Deputy Dow's affidavit carefully states facts supporting a probable cause finding, with particular attention to the nexus between the illegal marijuana cultivation and the campsite. His affidavit is sufficient, and Carpenter is not to the contrary.

Rodrigue's reliance on United States v. Lalor, 996 F.2d 1578 (4th Cir. 1993), and United States v. Danhauer, 229 F.3d 1002 (10th Cir. 2000), is misplaced for the same reason. The affidavit in Lalor was deemed "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at [the

-13-

search location]" because, inter alia, it "does not describe circumstances that indicate such evidence was likely to be stored at Lalor's residence"; the Fourth Circuit therefore concluded that "the magistrate was given no basis for making a judgment concerning this aspect of probable cause." 996 F.2d at 1582-83. Similarly, the affidavit in Danhauer was deemed defective because it omitted facts tending to support the most crucial allegation in the case, namely an informant's claim that the defendants were manufacturing methamphetamine, and because it was "replete with repetitive and tenuous facts" and therefore did not "provide [the] magistrate with a sufficient basis for drawing a reasonable inference that a search would uncover evidence of criminal activity." 229 F.3d at 1006. As explained above, Deputy Dow's affidavit contains no such defect.

Finally, even assuming arguendo that this might be a close case, the district court properly deferred to the state court judge's practical, common-sense probable cause determination. See Ribeiro, 397 F.3d at 48-49; Barnard, 299 F.3d at 93.[4]

**Affirmed**.

---

[4]Because we find that the suppression motion was properly denied on probable cause grounds, we do not reach the question of whether the "good faith" exception to the exclusionary rule applies. See United States v. Leon, 468 U.S. 897, 922 (1984).

-14-